Delaware Trust Company, Respondent, *v.* Maxmilian Calm et al., Appellants.

Contract — action thereon can only be maintained against party in default — cause of action must exist when suit is brought — agreement held to be a contract to purchase and not a guaranty of repayment.

Where a contract requires contemporaneous performance neither party can sue at law until he has put the other in default. An offer to perform made in the pleadings or during the trial is not enough.

Courts of equity have plastic hands and can adjust matters as of the date of the trial, but courts of law are bound by rigid rules and unless the cause of action is ripe when the suit is commenced it cannot be enforced without the commencement of another action.

An agreement was entered into between plaintiff's assignors and the defendants and their assignor to acquire property in California, plaintiff's assignors to have a three-eighths interest therein. The defendants agreed that they would at any time within three years, at the request of plaintiff's assignors, purchase for cash all the right and interest of the latter in the business, paying them therefor the actual amount of cash paid out or expended by them in and about the business. *Held*, to be a contract by defendants to purchase the property, and that it was the duty of plaintiff or its assignors to tender performance on their part and demand performance on the part of the defendants before an action could be maintained.

*Delaware Trust Co.* v. *Calm*, 122 App. Div. 560, reversed.

(Argued March 24, 1909; decided April 27, 1909.)

Appeal from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 17, 1907, which sustained plaintiff's exceptions to a dismissal of the complaint directed by the court at a Trial Term and granted a new trial.

This action was brought to recover the sum of $2,594.97, which is alleged to have become due to the assignors of the plaintiff upon a written instrument, under seal, entered into on the 21st of November, 1899, by the defendants as parties of the first part and S. Rodmund Smith and J. Ernest Smith as parties of the second part. After reciting that the parties of the

first part had invited the parties of the second part " to go into a business venture in locating, taking up, and acquiring ore lands and claims, and incidentally, mineral and ore lands of every description in the state of California," the claims to be " taken up and proved in the names of such persons as are furnished by the parties hereto," it was stipulated, among other things, as follows: "*First.* To take, hold and acquire all lands, claims and rights of all kinds in the following shares and proportions, namely, two-eighths part thereof to the use and behoof of H. B. Stevens, his heirs, executors and administrators; three-eighths part thereof to the use and behoof of Charles E. Calm, Maxmilian Calm and Edward Calm, their executors, heirs and administrators; and the balance three-eighths part thereof to the use and behoof of S. Rodmund Smith and J. Ernest Smith, their heirs, executors and administrators. * * * *Third.* To hold said lands, claims and rights in said shares and proportions, so that the same may be leased on royalty or sold outright as in the joint judgment of the parties hereto, may decide to be the best interests of the parties hereto. * * * *Sixth.* The said parties of the first part further covenant, promise and agree that they will at any time within three years of this date, at the request of the said parties of the second part, purchase for cash all the right and interest of the said parties of the second part in said business and this agreement, paying them therefor the actual amount of cash paid out or expended by them in and about said business."

The remaining clauses of the agreement are not now important.

At some time the Messrs. Calm acquired the interest of Mr. Stevens, and on the 28th of February, 1900, the Messrs. Smith assigned to one Edward T. Canby an equal undivided one-third part of their interest in the agreement and "all the benefits and advantages to be derived thereunder." Mineral claims and lands were located pursuant to said contract, the investments being made by the defendants and the evidence of title being taken in the names of the nominees of the respective parties, because under the law only a small quantity

of land could be "located" by one person. From time to time the defendants called upon the Messrs. Smith for their proportionate contribution to the joint enterprise, and they promptly responded until they had paid between two and three thousand dollars. Three days before the option contained in the sixth clause of the agreement expired, and on the 18th of November, 1902, J. Ernest Smith wrote the defendants a letter of which the following is the material part : " I have received a letter since the negotiations looking to the sale of the oil property, from my brother, and he states that he thinks it would be best to close the whole matter up and to that end he desires me to write you that we will accept the condition in our agreement of repayment by you of moneys advanced in this undertaking. To this conclusion both Mr. Canby and I agree. This notice is given to you in conformity with the contract which expires on the 25th of this month. * * * As our option on the oil lands does not expire until December, I am quite willing to leave this matter open, being protected now by the notice given you as above, until we can hear from these friends, which may change the whole status of the affair, and further than that with the same protection in the new agreement, I should like to leave the matter open until January, if it meets with your approval, so that if it is the joint judgment of the parties in the syndicate that we may continue for another year under the same conditions as existing between us at this time."

The defendants replied to this letter, which was received the day after its date, and on the trial the plaintiff produced the answer and showed it to the counsel for the defendants. While each party seemed to challenge the other to offer it in evidence, neither did so. About the first of November, 1904, the Messrs. Smith and Mr. Canby, each by a separate instrument, assigned to the plaintiff his right, title and interest in the agreement of November 21st, 1899, and in all actions and causes of action arising thereon. Shortly thereafter this action was commenced by the plaintiff as such assignee to recover the sum of $2,594.27, alleged to have been due its assignors from the defendants.

The complaint, after setting forth in substance the facts already stated, alleged that "the defendants refused to purchase the said right and interest and wholly failed to perform their said agreement to make such payment." This allegation was denied by the answer. Upon the trial no evidence was given tending to show any demand or tender in behalf of the plaintiff or its assignors, and when the plaintiff rested the court dismissed the complaint for this reason, but made an order directing that the plaintiff's exceptions be heard in the first instance at the Appellate Division, and suspending the entry of judgment in the meantime. Upon appeal, by a divided vote, the plaintiff's exceptions were sustained and a new trial was granted, with costs to the plaintiff to abide the event. The defendants appealed to this court, giving the usual stipulation.

*Henry L. Scheuerman* and *James N. Rosenberg* for appellants. Plaintiff's assignors did not make at the time of their alleged request a tender of the things to be purchased by defendants. In all contracts whereby one party is to pay money and the other is to transfer property, the payment and transfer ordinarily are mutual, dependent and concurrent conditions. (*Dunham* v. *Pettee*, 8 N. Y. 508; *Lester* v. *Jewett*, 11 N. Y. 543; *Kelly* v. *Upton*, 5 Duer, 336; *Bank of Columbia* v. *Hagner*, 1 Pet. 455; *Payne* v. *Lansing*, 2 Wend. 525; *S. S. & L. Society* v. *Hildreth*, 53 Cal. 721; *Houston* v. *Spruance*, 4 Har. 117; *Buchan* v. *Sumner*, 2 Barb. Ch. 165; *Hiscock* v. *Phelps*, 49 N. Y. 97; *Fairchild* v. *Fairchild*, 64 N. Y. 471; *Taylor* v. *Blair*, 59 Hun, 347; *Page* v. *Shainwald*, 169 N. Y. 246.)

*George P. Breckenridge* for respondent. The plaintiff's assignors having requested repayment, the defendants were thereupon required to repay. The provisions of the 6th clause of the contract are independent and either party may bring suit without tender of performance. (29 Am. & Eng. Ency. of Law [2d ed.], 688; *Tipton* v. *Feitner*, 20 N. Y. 433; *Raegener* v. *Hubbard*, 167 N. Y. 306; *Slocum* v. *Despard*, 8 Wend. 619; *Northrup* v. *Northrup*, 6 Cow. 296;

*N. H. & N. Co.* v. *Quintard*, 6 Abb. Pr. [N. S.] 133 ; *Grant*
v. *Johnson*, 5 N. Y. 255.)

Vann, J.   When the assignors of the plaintiff exercised
the option given by the sixth clause of the agreement in
question, the arrangement became a contract, whereby one
party agreed to purchase and, by necessary implication, the
other party agreed to sell "for cash, all the right and interest
of" the latter "in said business and" said "agreement."
The buyers were to pay for the "right and interest" agreed
to be sold "the actual amount of cash paid out or expended"
by the sellers "in and about said business."   The evidence
warrants the inference that both real and personal property
had been acquired in the business, and that the evidence of
title stood in the names of various individuals, some of whom,
and among them certain "nominees" of the sellers, were par-
ties neither to the agreement nor the action.   Thus an execu-
tory contract came into existence as of the date when the
option was exercised for the purchase and sale of both kinds
of property. (*Benedict* v. *Pincus*, 191 N. Y. 377, 383.)
The contract was thus made, but neither party performed it
by simply making it and no time or place for performance
was specified.   Moreover, in exercising the option, the plain-
tiff's assignors expressed the desire to leave the matter open
until certain other business could be arranged, subject, how-
ever, to the protection of the option already exercised, pro-
vided no arrangement should be made on the same basis for
another year.

Under these circumstances it was the duty of the plaintiff
or its assignors to tender performance on their part and to
demand performance on the part of the defendants before
subjecting them to the expense and annoyance of an action
to recover the amount of the purchase price.   Otherwise the
sellers would have both money and property and the buyers
nothing.   The contract was for the purchase of property,
not a lawsuit by which the property might be obtained.
This is an action at law and unless the right to maintain it

existed when it was brought, it did not exist at all.  Courts
of equity have plastic hands and can adjust matters as of the
date of the trial, but courts of law are bound by rigid rules
and unless the cause of action is ripe when the suit is com-
menced it is not one that can be enforced without the com-
mencement of another action.     The plaintiffs alleged that
the defendants refused to perform and this allegation was
denied in the answer.    It did not meet the burden of proof
cast upon it by the pleadings and the facts, for it gave no
evidence tending to show any offer, tender or demand.

The action was brought on the theory that it was for the
recovery of a debt and that the commencement of the suit
was a sufficient demand, but there was no debt.    The express
promise of the buyers was to purchase and pay for various
rights and interests in a certain business and agreement, and
the implied promise of the sellers was to transfer or assign
those rights and interests to the purchasers, for there can be
no purchase without a sale.    Some of the rights were in the
nature of an interest in realty and the written evidence of title
stood in the names of outsiders who had been nominated by
the sellers.    Concurrent action was required and no debt could
come into existence until the sellers had assigned or offered
to assign that which they had agreed to sell.    The obligations
of the parties were mutual and dependent, for both were to
be performed at the same time.    (*Dunham* v. *Pettee,* 8 N. Y.
508, 512; *Payne* v. *Lansing,* 2 Wend. 525.)    "The general
rule is to consider all covenants dependent, in the absence of
a contrary intention, for this is the way most men make their
bargains, neither party intending to perform unless the other
at the same time performs on his part."    (29 Am. & Eng.
Encyc. of Law [2d ed ], 689.)

One party had something to sell and agreed to sell it, but
it was a kind of property that required a written transfer not
only from themselves but from their nominees or representa-
tives before the sale could be completed and a debt created.
As was said by this court in an early case: "The purchaser
is not bound to pay the purchase money unless he receives

the thing purchased; and how can .it be said that he has refused to receive the thing purchased, and to pay the money for it, when he has never had the opportunity of receiving it?" (*Lester* v. *Jewett*, 11 N. Y. 453, 454.)

"In contracts of this description, the undertakings of the respective parties are always considered dependent, unless a contrary intention clearly appears. A different construction would in many cases lead to the greatest injustice, and a purchaser might have payment of the consideration money enforced upon him and yet be disabled from procuring the property, for which he paid it." (*President, etc., Bank of Columbia* v. *Hagner*, 1 Pet. 455. See, also, *Page* v. *Shainwald*, 169 N. Y. 246, 251, and *Taylor* v. *Blair*, 59 Hun, 347, 350.) The agreement itself was not a transfer but merely an implied promise to transfer upon performance by the other party. Where a contract requires contemporaneous performance neither party can sue at law until he has put the other in default. An offer to perform made in the pleadings or during the trial is not enough, and even that kind of an offer was not made in this case.

The respondent claims and the Appellate Division held that the contract was a "guaranty of repayment," but the parties did not say so. The covenant of the defendants was to purchase, not to guarantee, and to pay, not to repay. The money contributed to the joint undertaking by the plaintiff's assignors was not advanced, but invested. One party agreed in advance to buy the other out if the latter so elected within a certain period, and to pay for his interest the amount he had paid in. The election when made did not turn the promise to purchase into a promise to guarantee simply because the purchase price specified was measured by the amount invested. The principle would be the same if a definite sum had been named, or the purchase price had been measured in some other way. The money was not to be restored, or made good, but to be paid as the consideration for the purchase of property, or an interest therein. Any other construction would have no foundation in the language used by the parties.

We think the action of the trial court was in accordance with law, and that the order of the Appellate Division should be reversed and the complaint dismissed upon the order of nonsuit, with costs to the appellants in all courts.

Cullen, Ch. J., Gray, Edward T. Bartlett, Haight, Werner and Hiscock, JJ., concur.

Order reversed, etc.