(70 Misc. Rep. 342.)

## HENDRICKSON v. CALLAN.

(Supreme Court, Special Term, Albany County. January, 1911.)

1. SALES (§ 371*)—DELIVERY—NECESSITY OF TENDER.

Where defendant in consideration of plaintiff's buying certain bonds agreed to purchase one-half of the bonds from plaintiff within a specified period, plaintiff could not maintain an action for breach of contract to purchase, in the absence of a tender of the bonds within the time specified.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1086–1088; Dec. Dig. § 371.*]

2. TIME (§ 10*)—COMPUTATION—HOLIDAYS—STATUTES.

General Construction Law (Consol. Laws 1909, c. 22) § 20, provides that a number of days specified as a period from which a certain day within which, or after or before which, an act is authorized or required to be done, means such number of calendar days, exclusive of the calendar day from which the reckoning is made; Sunday or a public holiday other than a half holiday being excluded from the reckoning "if it is the last day of any such period," and that the day from which any specified weeks or months of time is reckoned shall be excluded in making the reckoning. Defendant contracted to purchase certain bonds from plaintiff "within a year from January 1, 1909." Plaintiff completed his purchase of the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

bonds in December, 1909. December 31st fell on Friday and January 1st (New Year's Day) fell on Saturday, and on January 3, 1910, which was Monday, plaintiff tendered the bonds, and the tender was refused. *Held*, that such tender was required to be made on the last day of the contract year, though a public holiday, since under such statute Sunday or a public holiday is not to be excluded from the reckoning of a period of time if it be the last day of a period of years, but only in case it is a period of days, weeks, or months.

[Ed. Note.—For other cases, see Time, Cent. Dig. §§ 34–52; Dec. Dig. § 10.*]

Action by Howard Hendrickson against Peter J. Callan to recover $1,500 and interest from January 1, 1910, for alleged breach of a contract to purchase certain bonds and stocks. Dismissed.

Action on contract to recover $1,500 and interest from January 1, 1910, for alleged breach of contract to purchase bonds and stocks. Plaintiff and defendant, with John J. Gallogly, were syndicate managers of a syndicate formed for the purpose of combining the business of two corporations, and to provide for an issue of bonds of the Hygienic Ice & Refrigerating Company, by the sale of a portion of which the sum of $100,000 was to be raised for corporate purposes. An underwriting agreement was prepared to be executed by the syndicate managers, by the terms of which the subscribers agreed to purchase the amount of bonds set opposite their respective names in the said contract. The syndicate managers were authorized by the terms of this agreement to become subscribers, with the same rights and obligations as other subscribers. It was further provided that nothing in the agreement or otherwise should constitute the subscribers partners with or agents for one another or for the syndicate managers. The subscribers were to pay for their bonds in installments, but reserved the right to pay the full amount of their subscription at any time prior to the maturity of any loan made under the agreement, and withdraw and have delivered to them the bonds for which they had subscribed, or their proportion thereof in case any of the bonds had been sold by the syndicate managers. The plaintiff and defendant, besides being syndicate managers, were interested in the Hygienic Ice & Refrigerating Company as directors and otherwise. The defendant requested the plaintiff to subscribe as a subscriber the agreement for an amount in excess of that for which the plaintiff had desired to subscribe. The plaintiff, a lawyer, was moved to make this subscription by an agreement which the defendant made with him, which was drawn by the plaintiff himself, and which was as follows: "In consideration of Howard Hendrickson subscribing for three thousand dollars of bonds of the Hygienic Ice & Refrigerating Company of Albany, N. Y., I agree to purchase fifteen hundred dollars of such subscription from him within one year from January 1st, 1909. Such bonds so purchased shall carry with it such capital stock as may accompany such bonds. P. J. Callan. Howard Hendrickson. Dated Dec. 24, 1908." In the month of December, 1909, the plaintiff completed his purchase of the bonds in question, and received from the company the whole amount of bonds for which he had subscribed. December 31, 1909, fell on Friday. January 1st (New Year's Day) fell on Saturday. Sunday intervened, and on January 3, 1910 (Monday), the plaintiff tendered the $1,500 par value of the bonds and the stock specified in his agreement with the defendant. The defendant refused to accept the tender, claiming that it was too late, and not in accordance with the terms of the contract. This action was thereupon brought by the plaintiff to recover $1,500 and interest from January 1, 1910.

Upon the trial of this case before a jury, at the conclusion of all the evidence, both parties moved for a direction of a verdict and thereby left the determination of the case to the court.

A. Page Smith, for plaintiff.
Neile F. Towner, for defendant.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

LE BOEUF, J. The securities referred to in the underwriting agreement came into existence within the year 1909. The plaintiff pursuant to the terms of that agreement which permitted him to obtain possession of them before the time for the payment of the last installment had expired, obtained possession of these securities during the year 1909. There was nothing, therefore, to relieve either party from whatever their responsibilities were under this contract during the year 1909.

It is plain from the contract that the plaintiff, who drew it, intended to obligate the defendant to purchase one-half of his subscription within one year from the date which he fixed in that contract. It is not apparent, however, that it was the intention of the plaintiff to immediately confer title to one-half of this subscription upon the defendant as soon as he should come into possession of the bonds. Nor does the plaintiff make any such claim. The plaintiff's claim is that the defendant agreed absolutely to purchase these securities—that that agreement was not measured by the period specified in the contract, but was one which the defendant, it may be assumed, within the period of the statute of limitations could at all times be required to perform, and if he did not perform could be sued for its breach. This position embodies two claims: One. That no tender of the securities was required. Two. That, if tender were required, it was made in time.

[1] Taking up the first proposition, it appears clear that the contract made by these parties was not an executed, but an executory, contract. It appears equally clear that the conditions of the contract were concurrent. Something was to be done by the plaintiff on one hand, to wit, the tender of the securities. Something was to be done by the defendant upon such tender, to wit, payment therefor or a refusal to perform. The plaintiff proceeded upon the theory that the tender was required in his complaint, where a tender is alleged and claimed to have been made within the time fixed for the life of the contract. It was, however, later contended that no tender whatever was really necessary, except as one might be required to be made before the commencement of the action. This proposition does not seem to be borne out by the authorities.

"In Callenonel v. Briggs, 1 Salk. 112, there was an agreement that the defendant would pay a certain sum of money, in six months after the bargain, the plaintiff transferring stock. Holt, Ch. J., said: 'If either party would sue upon this agreement, the plaintiff for not paying, or the defendant for not transferring, the one must aver and prove a transfer, or a tender, and the other a payment or a tender; for transferring in the first bargain was a condition precedent, and, though these be mutual promises, yet, if one thing be the consideration for the other, then a performance is necessary to be averred. If I sell you my horse for £10, if you will have the horse, I must have the money; or, if I will have the money, you must have the horse.' Therefore, the report says 'he obliged the plaintiff either to prove a transfer, or a tender and refusal within six months.'" Lester v. Jewett, 11 N. Y. 453–456. This case was relied upon in Lester v.

Jewett, supra, where for a valuable consideration one party had agreed at the expiration of one year from the date of the contract to, as here, purchase of a definite person certain definite securities. The plaintiff sued for breach of the contract to purchase. Upon demurrer four of his counts which did not allege an offer or tender of the stock were held bad, upon the theory that the promises of the parties were concurrent. It was claimed that the case was to be distinguished from cases cited, including Callenonel v. Briggs, supra, because as in this case they claimed a valuable consideration for the agreement to purchase existed. The court held that that could not alter the nature of the contract, saying:

"The true and only question is, What is the defendant bound to do in order to perform his contract? or rather, under what circumstances will he be considered in default for its nonperformance?"

The date for performance, to wit, at the expiration of one year, would have been on the 6th day of September, 1840. A further count alleged an offer of performance "at the expiration of one year from the date of the instrument, to wit: on the 7th day of September, 1840." The court held that the use of the words "at the expiration of one year" was a sufficient allegation of performance; that the further specification of a date which was after the expiration of one year could be stricken out as surplusage. The case last cited has never been overruled.

In Taylor v. Blair, 59 Hun, 347, 13 N. Y. Supp. 154, a situation somewhat similar to the one at bar existed. The parties who had induced another to purchase shares of capital stock of a company agreed:

"That if at the end of one year from this date (April 4th, 1873) the said Meyer shall desire to sell the said shares at the price paid for the same by him, we will purchase the same and pay him the amount paid by him on the same, with interest."

On March 7, 1874, Meyer notified the defendants that he desired to sell his shares under the agreement. The court said:

"And, before a recovery could be had in the action, it was incumbent upon the present plaintiffs to prove that on the 4th of April, 1874, Meyer offered or tendered a transfer of these shares to the defendants. That was a condition precedent, according to the terms of the agreement, upon which the right to recover this money depended."

It is apparent here, where notice had been given of the intention to exercise the option to sell within time, that the court insisted not only on a tender, but that the tender must be made within the life of the contract, to wit, not later than April 4, 1873. This was the same contract under construction in Meyer v. Blair, 109 N. Y. 600, 17 N. E. 228, 4 Am. St. Rep. 500, relied on by plaintiff's attorney. There, however, the question of tender was not considered by the Court of Appeals.

That the Court of Appeals did not disagree with the doctrine in Taylor v. Blair is shown by the citation of this case in Delaware Trust Co: v. Calm, 195 N. Y. 231, 88 N. E. 53. There parties had entered into a joint venture in which their interest was fixed in real and per-

sonal property by the terms of the instrument in suit. As one of the moving considerations evidently for entering into the agreement for purchase, the first parties to the agreement covenanted that they would "at any time within three years of this date, at the request of the said parties of the second part, purchase for cash all the right and interest of the said parties of the second part in said business and this agreement." The parties qualified to sue under this agreement gave notice of the exercise of their option within the required time. At this time the court said:

"Thus an executory contract came into existence as of the date when the option was exercised for the purchase and sale of both kinds of property. Benedict v. Pincus, 191 N. Y. 377, 383 [84 N. E. 284]. * * * The action was brought on the theory that it was for the recovery of a debt, and that the commencement of the suit was a sufficient demand, but there was no debt. The express promise of the buyers was to purchase and pay for various rights and interests in a certain business and agreement, and the implied promise of the sellers was to transfer or assign those rights and interests to the purchasers, for there can be no purchase without a sale. * * * Concurrent action was required and no debt came into existence until the sellers had assigned or offered to assign that which they had agreed to sell."

The court cited approvingly Lester v. Jewett, supra. There was no evidence in this case tending to show an offer, tender, or demand, and the court sustained the trial court in dismissing the complaint.

The reliance of the Court of Appeals in this case upon these earlier cases does not disclose any intent on its part to change the rule as claimed by the plaintiff. I can find nothing in this decision from which it may be assumed that that court will now hold that a tender or offer of tender, though necessary, could be made at any time before the commencement of the action or the trial of the case. The authorities cited by the plaintiff for this proposition do not bear out their contention. The trend of authority is apparently unbroken in favor of in such cases requiring a tender or offer of tender within the time fixed for the performance of the contract by its terms. Indeed, it may be asked, if this were not so, what object would the plaintiff have had in inserting a definite period of a year in the contract which he desired and required the defendant to sign.

But the plaintiff claims that these cases may be further distinguished upon another theory, saying:

"The plaintiff purchased $1,500 of said bonds which he did not want, and at defendant's request, and he should not be compelled to keep that which he did not want and which only came into existence by defendant's action. Plaintiff acted as defendant's agent, and the relation of vendor and purchaser did not exist between them."

. The authorities cited for this proposition, however, do not appear to sustain it. Both the plaintiff and the defendant were mutually interested in the success of the ice company. Both were syndicate managers and officers of the company. If the relation of vendor and purchaser did not exist between them, it was because the contract was executory. It is true the title did not pass to defendant, for that reason something was yet to be done by plaintiff. The plaintiff in his statement claims that he purchased $1,500 of said bonds which he did not want. The whole situation is summed up in this assertion. He

did purchase not only the $1,500, but the remaining $1,500, and took title to the whole amount during the year in question in his own name. There was no agency for the defendant to be assumed from this transaction. Plaintiff simply placed himself in the position of demanding performance of the defendant as to the $1,500 of bonds he did not want within a stipulated time. His implied agreement to sell could not have been enforced after the expiration of that period. There was in this contract no more guaranty of repayment than what was claimed as such in Delaware Trust Co. v. Calm, supra. There was absolutely no agreement on the defendant's part to either himself pay, or to assure the payment to the syndicate managers or the corporation of what plaintiff himself by his subscription agreement agreed to pay. The best evidence of that is the fact that the plaintiff did himself purchase and pay for the whole amount of his subscription. There was no executed sale.

[2] 2. It having been determined that tender was required to be made and made within the period of time required by the contract, the question still remains, Was the tender pleaded and proven to have been made January 3, 1910, in time? Section 20 of the general construction law, a re-enactment of the provisions of the statutory construction law, provides:

"A number of days specified as a period from a certain day within which or after or before which an act is authorized or required to be done means such number of calendar days exclusive of the calendar day from which the reckoning is made. Sunday or a public holiday, other than a half holiday, must be excluded from the reckoning if it is the last day of any such period, or if it is an intervening day of any such period of two days. In computing any specified number of days, weeks or months from a specified event, the day upon which the event happens is deemed the day from which the reckoning is made. The day from which any specified number of days, weeks or months of time is reckoned shall be excluded in making the reckoning."

The plaintiff takes the position that the period of one year may be construed as a number of days, to wit, 365 days.

In Aultman & Taylor Co. v. Syme, 163 N. Y. 54; 57 N. E. 168, 79 Am. St. Rep. 565, the court said that the failure of the Legislature to include years in the statute was intentional.

"Had the Legislature intended to apply that method to periods of years, it could have disposed of the whole subject in a single sentence by saying that the day from which any specified period of time is to be reckoned shall be excluded from the reckoning. But it did not say that. The silence of the statute in this regard is therefore significant of the legislative intent to exclude from its operation other periods than those enumerated. We do not think that this rule of statutory construction is rendered inapplicable, because, as suggested on behalf of the appellant, a 'year' and 'twelve months' are for all practical purposes one and the same thing. A year, 12 months, 52 weeks, and 365 days all denote the same total period of time. If the statute had simply provided that the 'day' from which any specified number of 'days' is reckoned shall be excluded from the reckoning, it could hardly be contended that because there are 365 days in a year, *therefore the Legislature intended to apply the same rule of computation to years as to days.* But there would be quite as much force in such a contention as there is in the argument that because a year is composed of 12 months the same rule must apply to both."

It is claimed by the plaintiff that this case may be distinguished in that "years" were there involved, and because the statute specifically defines the period of a year to include 365 days. This, however, was the condition of affairs at the time of the decision in the Aultman Case. The statute now reads (section 58):

"The term year in a statute, contract, or any public or private instrument, means three hundred and sixty-five days, but the added day of a leap year and the day immediately preceding shall for the purpose of such computation be counted as one day."

It may be questioned if the purpose of this definition of a year as including 365 days was for any other purpose than to indicate the method of computing that period in the case of a leap year.

Referring back to section 20, as it now stands, it is noteworthy that the language there employed is "a number of days specified as a period," etc. Again, "In computing any specified number of days." The words "within one year" can hardly be deemed within this language.

But another reason exists. The same section provides for a distinction between days and weeks and months under differing conditions. The day from which all these periods shall be figured, if a specified number, is to be excluded in making the reckoning. As to that the . statute is specific. But it is not as to weeks and months when it comes to excluding Sunday or a public holiday, if it is the last of any such period. Those periods are evidently purposely omitted, and it is only "a number of days specified as a period from a certain day within which or after or before which an act is authorized or required to be done," whose last day if Sunday or a holiday is to be excluded. Now, it is apparent that a week is a period of days; yet, if the end of a single week fell upon a public holiday under this section, that day is not to be excluded from the calculation.

In Benoit v. New York Central & H. R. R. R. Co., 94 App. Div. 24, 87 N. Y. Supp. 951, the reason for the repeal of the section 788, Code Civ. Proc., was there stated. That section would exclude Sunday or a public holiday for any period of time, independent of the fact that it was the last day in the period composed of days, weeks, months, or years. When the statutory construction law repealed that provision and dropped the word "years," the court stated that there was sufficient reason for the distinction, saying:

"Where a party is given only a few days within which to perform an act, it is reasonable enough that his time should not be shortened by the occurrence of Sunday as the last day."

Ryer v. Prudential Ins. Co., 185 N. Y. 6, 77 N. E. 727, held, as to the six-month period within which to commence an action, that, even though the last day of the six-month period within which an action could be brought fell on Sunday, commencement of the action on the following Monday was too late.

It is claimed that this case is to be distinguished, because the period of a month or months was expressly defined by the statute. The distinction, however, does not appear to be clear. The rule has been laid down not only for months, but for a period of years. In the Benoit Case, supra, and in the case of Schinzel v. Best, 45 Misc.

Rep. 455, 92 N. Y. Supp. 754, it was held that Sunday was not to be excluded when it was the last day of a period of years. If, therefore, by any construction of the plaintiff's contract "within a year" could be held to extend to January 1, 1910, no tender was made on that day. Tender is not excusable under these authorities because the last day to make that tender was a public holiday.

A tender was made, however, under circumstances that might have caused some doubt. I have therefore carefully examined the provisions of section 25 of the general construction law to ascertain whether those provisions are broad enough to of themselves extend the time until the 3d of January, 1910. That statute provides:

"Where a contract by its terms requires the payment of money or the performance of a condition on a public holiday, such payment may be made or condition performed on the next business day succeeding such holiday with the same force and effect as if made or performed in accordance with the terms of the contract."

This sentence was added by chapter 39 of the Laws of 1902 to the provisions of section 24 of the statutory construction law (Laws 1892, c. 677). It followed almost immediately after the decision in Page v. Shainwald, 169 N. Y. 246, 62 N. E. 356, 57 L. R. A. 173. There an option was required to be exercised and tender made upon January 1st, a day certain—not "within" a specified time. The request and tender were made on the 3d of January, and it was insisted that the tender and request were in time. The court held, however, that, as the statutes then stood, there was nothing to prohibit the making of the request and the tender the 1st day of January, even though it was a public holiday. The court said:

"It is undoubtedly true that the state of the law on this subject is likely to prove embarrassing to many, such for instance as those who find themselves obliged to tender a considerable sum of money on a day which is just enough of a holiday to allow the banks to close from which he must obtain the money to make the tender, but not enough of a holiday to avoid the necessity of the tender if he would not breach his contract. But such faults, if faults they be, in our business law can be corrected only by the Legislature."

It is apparent in this case that the plaintiff was not obliged to make his tender on the 1st of January by the terms of the contract. It would seem as if the statute had been drawn to fit just the situation that was involved in that case—one "where the contract by its terms requires * * * the performance of the condition on a public holiday." This statute is in derogation of the rule as it had existed prior to that time. If the Legislature had intended to say that a public holiday was for the purpose of the performance of contracts to be excluded in the computation of time, and performance of such contract could be had upon the next succeeding business day, such intention could have been expressed by appropriate words.

I find neither reason nor authority for placing so broad a construction upon this provision of statute. A tender not having been made within the life of the contract, plaintiff failed to make out a cause of action, and the defendant is entitled to a dismissal of the complaint upon the merits.

Decision may be prepared in accordance with this opinion.

Complaint dismissed.