DANIEL E. CONNERS, Plaintiff, *v.* HARVEY J. WINANS, Defendant.

Supreme Court, Oneida County, April, 1924.

Vendor and purchaser — action to foreclose land contract — rights of vendor stated — foreclosure cannot be based on violation of independent covenants — covenants against cutting timber, to keep buildings in ordinary repair and keep buildings insured and assign policy to vendor are independent — no breach of covenant against waste was shown — covenant relating to insurance was complied with by policy in joint names with clause for payment of loss to parties as interest appeared — vendee should deliver policy to vendor.

Out of the nature of the relationship created by a land contract where the vendee is in possession there have developed certain equitable remedies, among which is the right of the vendor in a proper case to sell out the interest of the vendee for the purpose of satisfying his lien under the contract, in case of default, and while it seems a misnomer, for convenience this remedy is spoken of as foreclosure, and the action is one to foreclose the contract.

A vendor may not maintain an action to foreclose a land contract based upon the breach of an independent covenant.

While the rule of construction is that covenants in a land contract are *prima facie* dependent it must be held that a covenant prohibiting the vendee from cutting any timber on the farm which is the subject of the contract except for ordinary repairs to buildings and fences and for use as firewood, and covenants to keep the buildings in ordinary repair and to keep them insured in a stated amount and assign the policy to the vendor as collateral security, are independent and the breach thereof cannot form the basis of an action to foreclose the contract.

The evidence shows that there was no breach of a covenant against cutting timber since it appears that none of the timber cut was removed from the farm and likewise the covenant requiring the vendee to keep the buildings in ordinary repair was not breached by changes that he made in several of the small buildings to accommodate them to the necessary operations of the farm.

The evidence shows that the vendee has not done all he reasonably should have done in repairing the house and it is possible that the vendor may have a claim for damages in that respect, although the evidence is not definite enough to determine the extent to which the vendee has suffered the house to remain out of repair.

The covenant in the contract which requires the vendee to keep the buildings on the farm insured in a stated amount and to assign the policy to the vendor was substantially, though not technically, complied with, by a policy of insurance issued in the names of the vendor and vendee which carries a rider in which the relation of the vendee and the vendor to the property is stated and which provides that any loss shall be payable " to the insured, each as his interest may appear." It was impossible for the vendee with safety to insure the premises in his own name in the same way that a mortgagor secures insurance since to do so would be a violation of the standard insurance policy which provides that if the interest of the insured be other than undivided and sole ownership it must be stated or the policy will be void.

However, the vendee should deliver the insurance policy to the vendor and on delivery it must be accepted by the vendor so far as this action is concerned as a compliance with the terms of the contract in respect to the covenant relating to insurance.

ACTION to foreclose a land contract.

*Charles R. Bradbury,* for plaintiff.

*Willis, Doolittle & Guile,* for defendant.

SMITH, J. The plaintiff brings this action to foreclose a land contract entered into by the parties on the 26th day of February, 1920, whereby the plaintiff sold and the defendant purchased a farm in the town of Augusta, Oneida county, N. Y., consisting of about 103 acres of land with farm buildings, and a small amount of personal property on the farm, for the sum of $12,500. The contract provided for the payment of $3,000 at its date and of the balance, with interest thereon at the rate of five per cent, in installments of $100 each on the first day of July of each year, until the full sum of $6,000 shall have been paid, when the vendor agreed to deliver to the defendant a good and sufficient warranty

deed of the premises, and the vendee is to deliver to the vendor his bond secured by a mortgage upon the farm for the balance of the purchase price, $6,500.

The contract contains the following provisions which are material here:

" (1). The second party (vendee) shall not cut any timber on said farm during the continuance of this contract, except he may cut timber for ordinary repairs to buildings and fences on said farm, and also for his fire wood on said farm, and

" (2). He shall keep the same in ordinary repair.

" (3). He also agrees to keep the buildings thereon insured in some good safe insurance company approved by said Conners in an amount of at least six thousand dollars, and assign the same to said Conners as collateral security to this contract."

The defendant vendee on March 1, 1920, entered into and still remains in possession of the premises according to the terms of the contract. He agreed to pay for the property upon the terms and conditions in the contract stated, and to make prompt payments as therein provided and agreed to all the terms and conditions of the contract; he was given the privilege under the contract of paying any greater amount on the principal sum than that prescribed in the contract.

The defendant has kept up the payments as called for by the contract, both principal and interest, but the plaintiff claims that he has breached the covenants above quoted in that (a) he has cut certain timber contrary to the provisions of the contract; (b) he has failed to keep the buildings in ordinary repair, and (c) has failed to comply with the provision as to insurance in that the policy of insurance does not conform to the terms of the contract.

The defendant has not abandoned the property nor has he shown any disposition to abandon it or to escape from the provisions of the contract; on the contrary, the evidence shows a definite purpose to complete the purchase. He has kept up the payments of principal and interest; he has built a milk house; has built a concrete dam to create an ice pond; has turned a hop house useless as such into an ice house; has made changes in the hay barns for a more economical and efficient use of them; and has changed a small horse barn unnecessary as such into a hen house and wood house. It is contended on the part of the plaintiff that some of these acts operated as a violation of the covenant to keep the property in ordinary repair, but these are noted now as indicating that the defendant has not abandoned but apparently intends to live up to the terms of the contract. He has already paid $2,700 of principal as of July 1, 1923.

We have here presented for consideration a simple land contract which provides for the purchase and sale of the land, but fails to provide any remedies in case of the violation of any of its provisions. Any remedies which the plaintiff may have are, therefore, dependent upon the rules of law and equity applicable to the case. This necessitates an examination into the nature of land contracts in their legal and equitable aspects. On its face a land contract is simply an agreement whereby one party agrees to sell and the other party agrees to purchase a piece of property. Fundamentally there would seem to be no difference between such a contract and the ordinary contract for the purchase and sale of personal property, and on its face there is no difference excepting in one instance personal property, and in the other, land is contracted to be sold. Courts of equity in order better to conserve the rights of the parties have imposed peculiar characteristics upon land contracts where a vendee is let into possession, and the equitable remedies available grow out of these characteristics.

While the legal title remains in the vendor, the vendee in possession acquires an equitable title and the vendor holds the legal title in trust as it were for the vendee. There is an equitable conversion so that while the heirs of the vendor, in case of his death, must make conveyance of the legal title, the rights of the vendor under a contract, in case of his death intestate, pass to his representatives rather than to his heirs; the title of the vendee in possession is such that in the event of his death intestate, his interest in the realty descends to his heirs; so that, following the doctrine that equity deems that as done which ought to be done, the vendee in possession for all practical purposes becomes the owner of the property with all the rights of an owner in the operation of it, subject only of course to the terms of the contract; the vendor holds the legal title as security for the performance of the contract, but in effect has a vendor's lien upon the property; the status of the parties is somewhat analogous to that of mortgagor and mortgagee. 3 Pom. Eq. Juris. (4th ed.) 3042, § 1261; *Champion* v. *Brown,* 6 Johns. Ch. 398; *Sewell* v. *Underhill,* 197 N. Y. 168.

In Pomeroy's Equity Jurisprudence, *supra,* the nature of a land contract and of the rights of the parties thereunder is stated as follows: " The position of the vendor prior to conveyance is defined and determined by the doctrine of equitable conversion, rather than by that of mere equitable lien. He holds the legal title as security for the performance of the vendee's obligation, and as trustee for the vendee, subject to such performance, and that title may be conveyed or devised, and will descend to his heirs. In equity, his real interest is personal estate; he becomes

by equitable conversion the owner of the purchase-money, of which the vendee is trustee, and this claim for the purchase-money passes on his death to his executors or administrators. On the other hand, the vendee becomes, by conversion, the real beneficial, although equitable, owner of the land; his interest under the contract is, in equity, real estate, and descends to his heirs."

Out of the nature of the relationship created by a land contract where the vendee is in possession, there have developed certain equitable remedies, among which is the right of the vendor in proper case to sell out the interest of the vendee for the purpose of satisfying his lien under the contract, in case of default, and while it seems a misnomer, for convenience this remedy is spoken of as foreclosure, and the action as one to foreclose the contract. 3 Pom. Eq. Juris. (4th ed.) 3046, § 1262.

Both the vendor and the vendee may under proper conditions maintain an action in equity to foreclose his lien upon the property. The vendor has his lien for the unpaid purchase price and the vendee in case of the failure of the vendor to perform, has his lien for the amount he has advanced on the strength of the contract both on account of the payment of the purchase price, and under certain conditions, on account of improvements which he may have made upon the property relying upon the performance by the vendor of the contract, and this vendee's lien attaches whether he is in possession or not. *Elterman* v. *Hyman,* 192 N. Y. 113. Prior to the commencement of an action to foreclose a land contract it is unnecessary to make tender of the deed (*Freeson* v. *Bissell,* 63 N. Y. 168); and tender is unnecessary in an action at law to recover for an installment, but where all the installments are due, in such an action tender must be made before the action is brought. *Eddy* v. *Davis,* 116 N. Y. 247; *Ewing* v. *Wightman,* 167 id. 107.

The vendor may maintain an action for rescission or specific performance of the contract. Unless waived there must be a tender of the deed before an action for rescission or specific performance may be maintained. *McWilliams* v. *Long,* 32 Barb. 194; *Leaird* v. *Smith,* 44 N. Y. 618; *Hoag* v. *Parr,* 13 Hun, 95; *Lawrence* v. *Miller,* 86 N. Y. 131. But tender would not be a condition precedent where the purchaser had clearly abandoned the contract. *North's Adm'rs* v. *Pepper,* 21 Wend. 636. Where there has been such waste as to impair security of the vendor, he may maintain an action for damages for waste or the vendee may be enjoined. *Van Wyck* v. *Alliger,* 6 Barb. 507. The vendor of course can maintain an action for damages at law, for a breach of covenant or recovery of installments due. It is doubtful whether he could foreclose a contract

where an installment but not the whole amount payable on the contract is due. 39 Cyc. 1903. A covenant to pay an installment is an independent covenant. *Eddy* v. *Davis,* 116 N. Y. 247; *Champion* v. *White,* 5 Cow. 509. A vendee in possession may maintain ejectment. *Murphy* v. *Loomis,* 26 Hun, 659; *Bennett* v. *Gray,* 92 id. 86. He can also maintain an action for trespass or for injunction for waste by a third party. While the vendor may maintain an action for damages for breach of an independent covenant, he cannot maintain an action growing out of the breach of a dependent covenant without tendering a deed of the premises. *Ewing* v. *Wightman,* 167 N. Y. 107.

Sufficient has been shown to give a general idea of the respective rights of the vendor and vendee. The vendor may not maintain an action to foreclose the contract based upon the breach of an independent covenant. The action of foreclosure is an equitable action and finds its basis in equitable considerations. Equity dislikes forfeitures, and it is for this reason and for the further reason that where there is an adequate remedy at law that equity will not decree foreclosure for the breach of an independent covenant.

This action is brought to foreclose a contract on the ground of an alleged breach of covenants, and it becomes essential to determine, therefore, whether these covenants are dependent or independent. Under the common law covenants were *prima facie* independent, but this is not the rule of construction applied in this state; while the question of whether a covenant is dependent or independent is to be determined by the intent of the parties as shown by the contract, the rule of construction is that covenants are *prima facie* dependent. *Delaware Trust Co.* v. *Calm,* 195 N. Y. 231; *Rosenthal P. Co.* v. *Nat. Folding B. & P. Co.,* 226 id. 313, 320.

A classification of covenants as laid down by Lord Mansfield in *Kingston* v. *Preston,* cited in *Jones* v. *Barkley,* 2 Doug. 684, has been maintained until this time. There are according to his classification three classes of covenants: (1) Mutual and independent covenants where either party may recover damages from the other, and where the allegations by defendant of breach by the plaintiff afford no defense; (2) where covenants are conditioned and dependent, and the performance of one depends upon the prior performance of another; and (3) where covenants are mutual conditions to be performed at the same time. *Rosenthal P. Co.* v. *Nat. Folding B. & P. Co,* *supra.* A covenant is independent where its performance by one party is not related to the duty of the adverse party to perform covenants obligatory upon him.

It has been said that there are three classes of independent covenants now recognized — those in which the acts to be performed by the respective parties are to be performed at a fixed time or happening of certain events which bear no relation to one another; those in which the covenant does not form the entire consideration for the contract on the part of the adverse party, but forms a minor part of the consideration; those in which parties intend performance of their respective covenants without regard to performance by the adverse party of unrelated covenants. A covenant on the part of a vendee would be independent where he could pay up and demand his deed without showing that he had performed the covenant. 5 Page Cont. (2d ed.) §§ 2971–2973.

Having in mind then these classifications of covenants, it is clear that each of the covenants herein claimed to have been violated is an independent covenant; each is unrelated to any other covenant. It follows, therefore, that the plaintiff cannot on the ground of breach of either or all of them maintain an action to foreclose the contract. It would be most inequitable to hold otherwise. The plaintiff has mistaken his remedy.

The covenant against waste, commissive in the case of the covenant against cutting timber and permissive in the case of the covenant to keep premises in repair, and the covenant with respect to insurance, are all designed to protect the security of the plaintiff. Even if these covenants have been violated, there is nothing here to show whether the violation has in any wise affected the security of the plaintiff or the extent of damage by any breach of the covenants with respect to cutting timber and as to maintaining the buildings in repair. The evidence discloses that any breaches are of a minor character, so minor that the maxim *lex non curat de minimis* might well be applied.

The evidence discloses that there has been no breach of the covenant against cutting timber. The covenant was that the vendee would not cut timber excepting for ordinary repairs to buildings and fences and for fire wood. None of the timber cut was removed from the farm; what was cut has been used for the purposes authorized by the contract.

The clear intent of the contract is that the vendee should keep the premises in ordinary repair; the changing over of the hop house into an ice house did not constitute waste; nor did extending the hay track so as to pass through the barns, and for that purpose removing a couple of joists, or the changing of the horse barn into a hen house and wood house, constitute a violation of a covenant. These were proper adaptations of the property to the use of it by the vendee as equitable owner of it.

The main charge as to waste is that the defendant has not kept the house in ordinary repair. While he has made some improvements to the house by putting in some new floors, putting on some new shingles on a roof which leaked when he bought the property and has removed a decayed porch, he has not quite met the covenant to keep the house in ordinary repair. The covenant does not imply that " natural wear and tear by the elements " is excepted. A fair interpretation of this covenant is that the defendant was obligated to keep the buildings in such ordinary repair as a reasonably prudent man in the care of his own property would. No facts are presented from which it could be found that there had been a material failure to comply with the covenant. The evidence is not definite enough to determine the extent to which defendant has suffered permissive waste except with respect to a rotten sill on one side of the house, and as to a few other items of little moment. The house was not in good condition when the defendant took possession. It coud not be held that the intent was that he should rebuild it. The defendant has shown no disposition to abandon the property; in some respects he has materially improved it; he has built a concrete dam for an ice pond; he has built a milk house. It is just possible that in the exercise of ordinary prudence he has held back on the repair of the house with the purpose to get the utmost use of decaying parts of the house which ultimately will have to be removed entirely; upon proper proof it might be found to have been better policy considering the economical difficulties under which farmers now labor, to wait until a more favorable time for general repairs, especially if no material damage would result from delay. However, I do not feel that the vendee has fully met this covenant, and it is possible upon further proof the plaintiff might be able to maintain an action for damages for waste in this respect. But as I have already shown the covenant as to repairs is an independent covenant for which the remedy by foreclosure should not be granted.

There remains for consideration the alleged breach of the covenant as to fire insurance. The contract provides that the vendee shall " keep the buildings thereon insured in some good safe insurance company, approved by said Conners in an amount of at least six thousand dollars, and assign the same to said Conners as collateral security to this contract." The vendee took out a policy of fire insurance for six thousand dollars in the Home Insurance Company of New York covering the buildings, in the names of the vendor and vendee which carries thi, notation or " rider: " " It is understood and agreed that Daniel E. Conners is owner in fee of the real estate herein insured, and that H. J. Winans

is the purchaser of the same by contract, loss if any to be payable to the insured, each as his interest may appear."

The insurance company is satisfactory to the plaintiff; the complaint of the plaintiff goes to the form. There has not been a technical compliance with the provision of the contract, but strict compliance might affect the validity of the insurance policy itself; it would seem that compliance should be had with the substantive purpose of the contract rather than with the technical requirements of it when strictly to comply with the latter would not accord with sound practice in the issuance of insurance policies.

The provision in the policy above quoted adequately and accurately sets forth the interests of the parties as to title; every standard insurance policy contains this clause: " The entire policy shall be void unless otherwise provided by agreement in writing added hereto (a) if the interest of the insured be other than undivided and sole ownership."

In case of loss under the provision in the policy as issued, the insurer could not raise the question of failure to state the title or interest. On the other hand, if there had been a strict compliance with the provision of the contract, the policy under the literal interpretation of the clause thereof above quoted would have been void, because technically speaking the interest of the vendee is not that of " unconditional and sole ownership." While I am of the opinion, on the theory that equity deems that as done which ought to be done, that a purchaser in possession under a land contract is, where a policy is taken out in his own name and no mention is made in it of the vendor's interest, to be deemed the unconditional and sole owner within the meaning of the policy, yet the question in this instance is not free from doubt. 14 R. C. L. 1058; *Cromwell* v. *Brooklyn Fire Ins. Co.,* 44 N. Y. 42; *Sewell* v. *Underhill,* 197 id. 168.

While the tendency seems to be to hold as above indicated, it would have been hazardous to both parties literally to have complied with the terms of this contract. There is no such provision in the Insurance Law applicable to land contracts as exists with respect to mortgages, whereby through the attachment of a standard mortgagee clause, the lienor's interest is fully protected. Furthermore the clause in the standard fire insurance policy requiring a full statement of the interest of the parties is vital and not lightly to be disregarded. Both parties here have an insurable interest.

The plaintiff cannot justly complain that the insurance policy does not protect against loss; the provision that the loss if any is to be payable to the insured each as his interest may appear,

is a usual, proper and safe provision well understood in the insurance world; it is intended to and does safeguard the rights of all parties.

The breach charged is technical rather than substantial. The plaintiff should have and hold possession of the policy; possession of itself would secure payment to him in case of loss  There could be no objection to a modification of the " rider " on the policy so as to make it clear to the insurance company that any loss is payable, *first,* to the plaintiff to the extent of the amount unpaid on the contract, and *second,* to the defendant. This I think is unnecessary because the contract is clear  n this respect and would govern.

The defendant should be directed to deliver this policy to the plaintiff and it should be accepted by him so far as this action is concerned as a compliance with the terms o  the contract in this respect.

The complaint should be dismissed, with costs to the defendant. (Defendant will prepare findings of fact and conclusions of law in accordance herewith to be agreed upon; otherwise, to be settled upon three days' notice.)

Judgment accordingly.