OPINION OF THE COURT
Howard A. Zeller, J.
A judgment is sought declaring who is entitled to the proceeds, now in escrow, paid under a fire insurance policy. Plaintiffs, the Uphams and the Ettrichs, claim the proceeds; so do defendants, the Lowrys.
On August 31,1972, the Uphams by warranty deed conveyed title to a farm located in the Towns of Lebanon and Georgetown to the Ettrichs and took back a note secured by a mortgage on the farm. A balance is owing on the note.
On May 1, 1982, the Ettrichs entered into a “Land Contract Agreement” with the Lowrys to sell to them the same farm. The Lowrys paid $20,000 in cash and agreed to pay the remaining $178,000 in monthly payments of $1,717.76 over a period of 20 years. By the contract, the Lowrys agreed to insure “the premises against fire * * * in an amount equal to the balance of the principal due at any time,” and also agreed “that in all respects the Seller [Ettrichs] will be indicated on the policies of insurance as the owner of the property by deed.” The agreement provides “At any time after the sellers are able to discharge their mortgage to the Uphams, the purchaser may elect to receive a *317 conveyance of the premises by delivering to the Seller a purchase money Bond and Mortgage in an amount equal to the principal balance due” and then “the Seller shall execute and deliver to the Purchaser a Warranty Deed”.
A fire at the farm on November 13,1983, destroyed the main barn, three silos, and some personal property. Agway Insurance Company, as insurer of the property, issued checks totaling $186,604.77. A check of $150,300 for the destroyed barn was made payable to the Lowrys, Ettrichs and Uphams and the proceeds are being held in an interest-bearing escrow bank account. The remaining amount was paid directly to the Lowrys, for loss of personal property owned by them.
The Ettrichs last payment to the Uphams on the note was made March 1, 1984, and the balance due then was about $123,520.07. The Lowrys last paid the Ettrichs on February 1, 1984, leaving a balance due then of about $160,126.20.
Plaintiffs in their complaint allege the Lowrys failed to insure three silos on the farm contrary to a provision in the “Land Contract Agreement” between the Ettrichs and the Lowrys, and that after the fire they failed to provide “formal notice” of their intention to rebuild the destroyed structures. Plaintiffs also allege they will be damaged if the Lowrys are allowed to use the insurance proceeds to rebuild as there would not be sufficient resources to provide plaintiffs with the same security as existed prior to the fire. Plaintiffs Ettrichs and Uphams seek a judgment declaring: (1) defendants Lowrys are not entitled to use the insurance proceeds to rebuild the property; (2) plaintiffs Ettrichs are entitled to the insurance proceeds to reduce the outstanding principal balance due the Ettrichs from the Lowrys; and (3) the Ettrichs shall pay their outstanding debt due the Uphams on the note secured by the mortgage.
By answer and counterclaim, defendants deny they underinsured the three silos, deny that there are not funds to provide the plaintiffs sufficient security upon rebuilding the barn and deny that they failed to provide “formal notice” of their intent to rebuild the farm structures. Defendants affirmatively allege that since the “Land Contract Agreement” is the “equivalent in form to a deed” from the Ettrichs to the Lowrys, the moneys received from the insurance proceeds, according to Real Property Law § 254 (4) (a), must be put in a trust fund to be held by plaintiffs for the benefit of defendants Lowrys and released to the Lowrys in increments as they complete reconstruction of the farm buildings. Defendants, by their counterclaim, seek a judgment declaring their right to this relief, as well as the right to *318 immediately withdraw from the escrow account $20,695.45 as “reimbursement of their personal funds used to hire á professional to obtain said funds and clean up the damage caused by said fire.”
Plaintiffs Uphams and Ettrichs oppose the Lowrys’ counterclaim stating Real Property Law § 254 does not apply to installment land contracts and that even if it does, the Lowrys failed to comply with certain conditions precedent. Plaintiffs deny that the Lowrys have a right to be reimbursed for the costs of the public adjuster and for clean-up, as the Lowrys never consulted plaintiffs before contracting for these services.
The dispute is now before the court on a mótion by defendants Lowrys for summary judgment and a cross motion by plaintiffs for summary judgment.
Summary judgment is a drastic remedy and will not be granted if there is any doubt of the existence of a material and triable issue of fact. (Rotuba Extruders v Ceppos, 46 NY2d 223; see also, Siegel, NY Prac § 278.) Issue finding, not issue determination, is the key. (Fried v Bower & Gardner, 46 NY2d 765; Freedman v Chemical Constr. Corp., 43 NY2d 260, 264; Siegel, NY Prac § 278; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3212.16, pp 436-437.)
The main legal issue is whether a contract vendee of real property is entitled to have the proceeds of fire insurance policy, issued in the vendor’s name only and on which premiums were paid by vendee, held in trust by the vendor for reconstruction by the vendee of the destroyed property where the fire occurred while the vendee was in possession of the premises. No questions of fact exist concerning this issue.
A land contract vendee in the circumstances of the Lowrys has no common-law right to require the vendor to hold the proceeds of the fire insurance policy in trust for reconstruction of the destroyed property. In Raplee v Piper (3 NY2d 179), the court on similar facts held the vendee had the right to apply the insurance proceeds to the balance due on the contract. This is the extent of the vendee’s rights. Though the Raplee court cited Persico v Guernsey (129 Misc 190, affd 222 App Div 719) for the proposition that “the insurance proceeds form a trust fund for the benefit of both purchaser and seller” (Raplee v Piper, supra, at p 181), this reference should not be read broadly to require a trust fund for the purpose of reconstruction of destroyed property, at the vendee’s option. The court in Pérsico, in dicta, stated that the vendor had no duty to repair the destroyed property *319 with insurance proceeds (Persico v Guernsey, supra, at p 196) and the Raplee decision impliedly upheld that rule.
This common-law rule is not affected by the language in Conners v Winans (122 Misc 824), which compares the relationship between parties to a land contract to that of parties to a mortgage agreement for purposes of foreclosure. (See, 122 Misc, at p 827.) No language in that decision suggests a broader meaning.
Similarly, the decision in Brownell v Board of Educ. (239 NY 369), has no effect on the common-law rule stated above. Although the facts were different, the court wrote: “The benefit of the vendor’s policy belonged to the vendor, and the vendee had no claim on the insurance money” (p 373). The court also noted “that the insurance runs to the individual insured and not with the land.” (Supra, at p 374.)
In the absence of a common-law right imposing an equitable trust on the land contract vendor to hold the fire insurance proceeds for reconstruction of the destroyed property, is such a right provided in Real Property Law § 254 (4) (a)?
Of insurance proceeds received by reason of fire, Real Property Law § 254 (4) (a) as amended in 1965, reads:
“Said insurance money so received by the mortgagee shall be held by him as trust funds until paid over or applied as hereinafter provided. If the mortgagor shall notify the mortgagee in writing within thirty days after the fire that the mortgaged premises have been damaged thereby, and shall thereafter make good the damage by means of such repairs, restoration or rebuilding as may be necessary to restore the buildings to their condition prior to the damage, then upon presentation to the mortgagee within three years after the fire of proof that the damage has been fully made good (and if he so demands in writing within thirty days after such presentation of proof, then upon presentation to the mortgagee within thirty days after such demand of proof also of the actual cost of such repairs, restoration and rebuilding and of the reasonable value of any part of the work so performed by the mortgagor) the mortgagee, unless he rejects the proof submitted to him as insufficient, shall pay over to the mortgagor so much of said insurance money theretofore received by the mortgagee as does not exceed the lesser of (1) the reasonable cost of such repairs, restoration and rebuilding or (2) the total amount actually paid therefor by the mortgagor, together with the reasonable value of any part of the work done by him * * * The term ‘mortgage,’ as hereinabove *320 used, shall be deemed to include agreements extending or otherwise in any way modifying the terms or provisions of an existing mortgage. The term ‘mortgagor,’ as hereinabove used, shall mean the owner for the time being of the mortgaged fee or the junior mortgagee actually in possession of the mortgaged property, or the tenant for the time being in possession of the property under a lease which has been mortgaged. The term ‘mortgagee,’ as hereinabove used, shall be deemed to include the successors in interest of the mortgagee * * *
“The limitations and qualifications hereinabove imposed on the mortgagee’s right to retain proceeds of a fire insurance policy shall apply only to mortgages or extensions or other modifications thereof made after the effective date of this act.”
The Lowrys take the position that since this statute is remedial in nature, rules of liberal construction should be applied to effectuate the intent of the Legislature by construing a land contract to be equivalent to a bond and mortgage for purposes of Real Property Law § 254. The Lowrys assert this is a logical step following the analogy between land contracts and mortgages for purposes of foreclosure under the holding in Conners v Winans (supra). Plaintiffs Uphams and Ettrichs contend the language of the statute clearly applies only to mortgages and that no case law supports an extension of this remedy to parties to a land contract.
It is a well-settled rule of statutory interpretation that where the language is clear, it should be applied as written without resort to rules of construction or other extraneous material (McKinney’s Cons Laws of NY, Book 1, Statutes §§ 76, 92 [b]; § 94). A court must construe the language of a statute as it is written, and not as the court believes it should have been written (56 NY Jur, Statutes, §§ 106, 107, 111). “Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation” (56 NY Jur, Statutes, § 114). Real Property Law § 254 (4) (a) clearly applies “only to mortgages or extensions or other modifications thereof”. “A mortgage is defined as “ ‘[a]ny conveyance of land intended by the parties at the time of making it to be a security for the payment of money or the doing of some prescribed act’ ” (Burnett v Wright, 135 NY 543, 547, citing 2 Washburn, Real Property, p 43).” (Boyarsky v Froccaro, 125 Misc 2d 352, 359.) A land contract is not a conveyance of real property but only an agreement to convey real property in the future if certain conditions are fulfilled.
*321 Defendants Lowrys do not contend the “Land Contract Agreement” is a mortgage. Rather, they assert it is the “equivalent” of a mortgage for purposes of Real Property Law § 254 (4) (a). In enacting this section, the Legislature specifically used the term “mortgage”. The “Land Contract Agreement” at issue in no way extended or modified the existing mortgage agreement between the Uphams and Ettrichs but was a new and completely separate arrangement for the installment sale of the real and personal property whose title was in the name of the Ettrichs.
Had the Legislature intended to include installment contracts for the sale of land within the scope of this statute, it would have so státed. The specific reference to “mortgage” in the statute precludes this court from interpretation that would include the “Land Contract Agreement” in this action. That the Lowrys may have commenced reconstruction of the damaged property does not require a different interpretation.
The contention of defendants Lowrys that either under common law or pursuant to Real Property Law § 254 (4) (a) they are entitled to have the insurance proceeds now in escrow held by plaintiffs Ettrichs in trust to reimburse defendants in increments as they reconstruct the destroyed barn is without merit. Thus, there is no need to consider plaintiffs’ allegations, and defendants’ denials, of underinsurance on the silos, insufficient security, and lack of formal notice of intent to rebuild.
The parties dispute the right to $8,500 which was expended by the Lowrys to clean up the fire damage. This expense must be borne exclusively by the Lowrys as this work constitutes the commencement of reconstruction. This is not reimbursable from the fire insurance proceeds.
Plaintiffs deny that defendants Lowrys are entitled to be reimbursed for $12,195 they allege they expended to engage a public adjuster as defined by Insurance Law § 123 (3) (b). The Lowrys allege they hired such a public adjuster but they do not aver that they paid him or her. The name of such public adjuster, the circumstances of his or her engagement, whether plaintiffs expressly or impliedly consented to such engagement, the nature of the work performed, and other pertinent facts are not set forth in any affidavit. Hence, no decision on this phase of the lawsuit may be made at this time. A hearing or trial will be required on this issue. The sum of $15,000 shall be kept in the escrow account pending the determination of this issue.
Plaintiffs Ettrichs are entitled to the remaining balance of the insurance proceeds now in escrow, and shall apply the proceeds *322 to reduce the outstanding principal and interest due from defendants Lowrys under the “Land Contract Agreement” and plaintiffs Ettrichs shall pay plaintiffs Uphams the outstanding debt due to plaintiffs Uphams on the note secured by the mortgage. The discharge of the mortgage will then entitle defendants Lowrys, under the terms of the “Land Contract Agreement” the right, if they so elect, to receive a “conveyance of the premises by delivering to the Seller a purchase money Bond and Mortgage in an amount equal to the principal balance due.”
Counsel for the parties should confer with me concerning the form of the order to be submitted.