## SHERMAN D. HOOPER v. EDWARD C. VAN HUSAN.

*Land contract—Assignment by vendee—Action to recover payments.*

1. The vendee in a land contract is vested with the equitable title, but the legal title remains in the vendor, and is held as security for the payment of the purchase price of the land, upon the payment of which the vendee is entitled to a conveyance of the legal title.

2. If, when a land contract contains provisions for its avoidance on default by the vendee, the vendee's equitable title is subject to conversion on such default into a right to recover the moneys already paid, less damages caused by his default,

this right is created by the contract, and passes under an assignment by the vendee of the contract as collateral security for the payment of drafts drawn by him and discounted by the assignee, to whom the benefit of the payments inures, and, if any one has a right of recovery for the moneys so paid, it is not the vendee.

Error to Wayne. (Donovan, J.) Argued April 5, 1895. Decided June 4, 1895.

*Assumpsit.* Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*E. S. Clarkson,* for appellant.

*Brooke & Spalding,* for defendant.

Long, J. On June 9, 1888, the plaintiff and defendant entered into six land contracts, identical in their terms, each for the sale of a lot by defendant to plaintiff. The price of each lot was $650,—$100 at the date of execution, and the balance on or before July 1, 1893, in equal annual payments of $100, payable on January 1 in each year, together with 7 per cent. interest, payable semi-annually on the 1st of January and July. The vendee was also to pay all taxes and assessments assessed after the execution of the contract, and was to have possession of the premises while not in default. In case of default, the vendor was given the right to declare the contract void, and retain whatever might have been paid thereon, and any improvements made on the premises, and to take immediate possession of the land, and remove the vendee therefrom. The stipulations of the contract were to bind the assigns of the respective parties. The plaintiff paid on each contract $100 at the date of execution, and interest upon all of them up to July 1, 1888. Immediately afterwards the defendant, who held the legal title in trust for himself, Mr. Hannan, and Mr. Avery, conveyed two lots each to Hannan and Avery, and also assigned the corresponding contracts to them, and paid to them each

one-third of the moneys theretofore received. The plaintiff was informed of this division, and thereafter made no payments to the defendant, except on the account of the two contracts which he retained. The plaintiff subsequently paid, at irregular intervals, various sums upon the principal and interest of these two contracts, until January 13, 1891, when, being largely in default, both upon principal and interest, a supplemental agreement was made between him and the defendant, whereby, in consideration of the payment of the back interest and $50 to apply upon the defaulted principal, and the plaintiff's agreement to pay up on or before January 1, 1892, the remainder of the back principal and the payment falling due upon that date, the defendant agreed not to commence any proceedings to declare the contracts forfeited, or to foreclose them, or collect the amount due thereon before January 1, 1892.

On October 4, 1888, the plaintiff executed and delivered to the Detroit Savings Bank an instrument whereby he assigned and transferred to the bank all his right, title, and interest in all six of these land contracts, the contracts to be held by the bank as collateral for certain drafts discounted by it for the plaintiff. This assignment, of which the defendant learned shortly after it was made, the bank still holds, and the indebtedness for which it was given is still unsatisfied. The bank first learned of the pendency of this suit two days before the trial, when it was informed of it by the defendant.

The plaintiff paid nothing further to defendant after making the above supplemental agreement, and on January 7, 1892, the defendant caused to be served both upon him and the Detroit Savings Bank notices of forfeiture in pursuance of the power contained in the land contracts, declaring the contracts void and ended, and all rights of the vendee, and of any one claiming through him, thereunder, forfeited and terminated. Upon the same day the defendant served upon the plaintiff and upon the bank notices that the lots covered by the con-

tracts would be sold by him at public auction, at noon on the 20th day of January, 1892, at the west front door of the city hall in Detroit. The same notice was published in the Detroit Tribune upon the 8th and 15th days of January, 1892. The notices received by the plaintiff were given by him to his attorney, who attended the sale on his behalf. At the time of the sale the Detroit Savings Bank served upon the defendant a notice that, by virtue of the assignment above referred to, it claimed an interest in the lands covered by the contracts, and the right to an accounting for the amounts paid thereon. The lots covered by the contracts held by defendant were duly exposed for sale at auction at the date and place specified in the notice, and were bid off by the defendant at the amount then due and unpaid upon the contracts, he being the highest bidder therefor. The plaintiff had no dealings with the defendant from the time of receiving the notices of forfeiture and sale on January 7, 1892, until April 29, 1893, when he went to defendant's office, and offered to make payment of the amount that would then have been due upon the contracts, but the defendant declined to receive it, saying that he had sold the lots in November, 1892. The plaintiff shows no excuse for his failure to comply with the terms of his contracts, but claims to be entitled to recover from the defendant the entire amount paid by him on the two land contracts which the defendant retained, aggregating, with interest, $901.56.

Under this state of facts it is contended that, whatever the plaintiff's rights might have been had he not assigned the contracts to the bank, he is not now the owner of them, and is not in a position to maintain an action for the recovery of the money paid. Shortly after the contracts were executed, plaintiff made the following assignment to the bank:

"DETROIT, MICH., October 4, 1888.

"For value received, I hereby sell, assign, and transfer unto the Detroit Savings Bank of Detroit, Mich., all my

right, title, and interest to and in six (6) certain land contracts, all dated the 9th day of June, 1888, executed by and between Edward C. Van Husan, of Detroit, and myself, and providing for the sale to me by said Van Husan of lots 38, 39, 40, 41, 42, and 43 of Avery and Van Husan's subdivision of lots 16 and 17 of Mandelbaum's subdivision of the easterly part of fractional section 36, town 1 south, of range 11 east, and the easterly part of section 1, town 2 south, of range 11 east, said lands being situate in the city of Detroit, aforesaid. The said contracts are to be held by said bank as collateral security for the payments, according to their terms, of certain drafts drawn by me, as agent, on the Enterprise Coal & Exchange Co., of New York, and discounted by said bank for my account.

"S. D. HOOPER.     [Seal.]"

"November 29, 1889.

"I hereby agree that the above-mentioned contracts shall stand as collateral to the note for $1,145 and interest, dated New York, November 15, 1889, payable three months after date, at the U. S. Nat. Bank, in N. Y., made by R. W. Bissel, and indorsed by E. N. Frisbie and myself, the said note being taken by the Detroit Savings Bank in discharge of the drafts referred to in the above assignment. Should the bank find it necessary in the future to take a renewal or renewals, in whole or in part, of said note, this assignment shall remain in full force as security for the payment of such renewal note or notes.

"S. D. HOOPER.     [Seal.]"

Counsel for plaintiff admits that the bank got whatever interest Hooper had in the contracts, but contends that when the defendant declared them void and at an end they were void *ab initio*, and that it then resulted in Hooper having no further interest in the contracts, or further rights thereunder; that, therefore, the transaction was as though it had never been, so far as the lots were concerned, and that defendant had so much of plaintiff's money the same as though he had borrowed it, or had receipted for it to another person on behalf of Hooper.

Under this assignment of the contracts, the bank got all the rights that Hooper had under them or by virtue of them. Had Hooper kept up his payments, the bank

would have been entitled to the deeds which would have been made if the contracts had been fully performed, and, consequently, to the benefit of the moneys paid. Under plaintiff's contention, his own default would operate as a benefit to himself, and take from the bank and give to him the benefit of these payments. Counsel entirely misconceives the nature of the vendee's interest in the contracts. The vendee gets the equitable title, but the legal title still remains in the vendor, and is held as security for the payment of the purchase price. Upon the payment in full of the purchase price, the vendee has the right to have a conveyance of the legal title. Every payment increases the value of the vendee's interest. If it is true that, when the contract contains provisions for its avoidance on default by the vendee, the vendee's equitable title is subject to conversion on such default into a right to recover the moneys already paid, less damages caused by his default, yet this right is created by the contract, and that right, as well as the equitable interest in the land, passed by the assignment in this case. Declaring the contracts forfeited did not make them void from the beginning. It is true that the contracts were terminated by the declaration of forfeiture, but whatever rights the parties might have grew out of the contract relations, and passed under the assignment. If what is contended for here by counsel for plaintiff could be upheld, then the party, after such assignment, could default in all future payments, and, against the rights of his assignee, recover back the moneys already paid. The benefit of the payments inures to the assignee, and, if any one has a right of recovery for the moneys so paid, it is not the plaintiff. He cannot be permitted to take advantage of his own default. It is unnecessary to discuss the other questions.

Judgment is affirmed.

The other Justices concurred.