COMMISSIONER OF INTERNAL REVENUE v. UNION PAC. R. CO.

No. 94.

Circuit Court of Appeals, Second Circuit.

Nov. 30, 1936.

638

Robert H. Jackson, Asst. Atty. Gen., Sewall Key and Harry Marselli, Sp. Assts. to the Atty. Gen., and Darwin P. Kingsley, ·Jr., and Henry W. Clark, both of New York City, for respondent taxpayer.

A. C. Rearick and Paul Smith, both of New York City, for Chesapeake & Ohio Ry. Co., amici curiæ.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

This petition seeks a review of deficiencies in income taxes for the years 1924–1925–1926. The review involves three issues which will be referred to for convenience as "Sale of Block 394 Seattle Tide Lands"; "Sale to Kansas City Terminal Ry. Co.," and "Prior to 1909 Equipment Depreciation." The first two concern the sale of real property by an affiliate of respondent, and the third concerns the amount of loss which the taxpayer was entitled to deduct upon the retirement of rolling stock in 1924.

On May 1, 1920, an affiliate, Oregon & Washington Railroad Company, entered into an agreement with the East Waterway Dock & Warehouse Company for the sale of block 394 of the Seattle Tide Lands for $644,153.76 and the purchaser agreed to take the property, subject to an existing lease of a part thereof, and agreed to make installment payments of the purchase price, and did pay in 1920 $175,000. Thereafter, the required semiannual. payments were made until July 1, 1925, the date of final payment, with interest on the deferred installments. The purchaser took immediate possession, and, by the terms of the agreement, kept the premises insured, repaired the same, paid all taxes and assessments, and agreed not to make improvements costing more than. $500 without the written consent of the vendor. The rentals received under the lease were applied as payments on the purchase price. Upon final payment, the vendor executed and delivered a deed.

The second transaction involves a sale of land to the Kansas City Terminal Railway Company. The agreement, dated June 27, 1917, provided for payment of the purchase price within two years with interest. The vendee took immediate possession. and, as required by the agreement, constructed a line of railroad. A deed was executed and deposited with a trustee in 1919 but was not delivered until final payment in 1925.

In a consolidated return for 1926, the respondent took a deduction representing a loss on the sale of the Seattle Tide Lands and reported a profit on the sale to the Kansas City Terminal Railway Company. As to the former, the petitioner disallowed the deduction and found a profit; as to the latter, a larger profit was found.

The issue as originally framed by the pleadings regarding the sale of the Seattle Tide Lands involved a determination of the market value on March 1, 1913, and

the consequent profit or loss from the sale of the property. By an amendment to the petition, it was claimed that the contract of 1920 was an executed and unconditional sale and that income, if any, was received in that year. At the time of the amendment, the petitioner was barred by the statute of limitations from asserting a deficiency for the year 1920.

The original petition regarding the sale to the Kansas City Terminal Railway Company contained allegations that the contract was entered into in 1917. By an amended petition filed August 17, 1933, it was alleged that the transaction was consummated in 1917 and was taxable in that year. When this petition was filed, the petitioner was also barred by the statute of limitations.

The petitioner denies that the sales were taxable respectively in 1920 and 1917 and further contends that the respondent is estopped from so claiming. The Board found that there was no estoppel but that "'there was simply an error of both the taxpayer and the Commissioner." The Board concluded that the taxable years were 1920 and 1917, respectively, when the "substantial burdens and benefits of ownership" were transferred.

■ A closed transaction for tax purposes results from a contract of sale which is absolute and unconditional on the part of the seller to deliver to the buyer a deed upon payment of the consideration and by which the purchaser secures immediate possession and exercises all the rights of ownership. The delivery of a deed may be postponed and payment of part of the purchase price may be deferred by installment payments; but for taxing purposes it is enough if the vendor obtains under the contract the unqualified right to recover the consideration. Commissioner v. North Jersey Title Ins. Co., 79 F. (2d) 492 (C.C.A.3); Helvering v. Nibley-Mimnaugh Lumber Co., 63 App.D.C. 181, 70 F.(2d) 843; Commissioner v. Moir, 45 F.(2d) 356 (C.C.A.7).

■ In the instant case there was a contractual obligation to pay even though no notes or other evidence of debt were given. It was not an executory contract, as where the transfer of title and full payment are made conditions to the completion of the transaction. Lucas v. North Texas Lumber Co., 281 U.S. 11, 50 S.Ct. 184, 74 L.Ed. 668. The respondent granted a period of payment and retained title

for his own protection. The obligations imposed upon the purchaser of the Seattle Tide Lands, such as preserving and insuring the property, were intended to fulfill the same purpose of security.

The respondent's books were kept on an accrual basis, and the gain from the sale of the property was therefore taxable for the year when the contract was executed rather than the year when the payments were made. Helvering v. Nibley-Mimnaugh Lumber Co., supra.

■ In the sale of the Seattle Tide Lands, initial payments of more than one-fourth of the purchase price were made in 1920. Deferred semiannual payments were made thereafter until 1925. None of these payments were referred to in the respondent's returns until 1926, when a deduction for loss was taken. The taxpayer could not have kept its books on an installment basis (Treas.Regulation 45, Art. 43, Revenue Act of 1918, 40 Stat. 1058; Elmore v. Commissioner, 15 B.T.A.1210), and it did not attempt to do so. No power of election existed which, when exercised, became binding. Moran v. Commissioner, 67 F.(2d) 601 (C.C.A.1); Alameda Inv. Co. v. McLaughlin, 33 F.(2d) 120 (C.C.A.9). In the Moran Case, since doubt existed as to how the income should be returned, an election was held justifiable and was enforced. However, here the inclusion in the return of 1926 did not constitute an election, for in both these transactions the income was received in 1920 and 1917. The respondent had no choice and should have accrued the gain in those years. Sections 2(a), 8(g) Revenue Act of 1916, 39 Stat. 756, 757; sections 212, 213, Revenue Act of 1918, 40 Stat. 1058, 1064, 1065. Failure to do so did not create a power of election.

■ The petitioner contends that there was no evidence that these items were accrued on the respondent's books. But that fact is immaterial; actual bookkeeping entries do not control in the determination of the question of whether an item is income or deductible on an accrual basis, but the facts do. See United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347; New York Cent. R. Co. v. Commissioner, 79 F.(2d) 247 (C.C.A.2).

■ It is argued by the petitioner that the respondent is estopped from making its present claims. An estoppel cannot originate in a mere statement of law or in

silence due to an error of law. Moreover, the person claiming the benefits of estoppel must appear ignorant of the true facts and be adversely affected by the acts of the person against whom the estoppel is claimed. "Estoppel is not an element of income but only a doctrine affecting liability." Sugar Creek Coal & Mining Co. v. Commissioner, 31 B.T.A. 344, 346. One who pleads estoppel has the burden of establishing all its elements. Brewerton v. United States, 9 F.Supp. 503 (Ct. Cl.). Here the Board concluded that the failure to report the sales was due to an error both of the taxpayer and of the Commissioner, and there is evidence supporting this conclusion. Under these circumstances, the doctrine of estoppel may not be applied. Salvage v. Com'r, 76 F.(2d) 112 (C.C.A.2) affirmed Helvering v. Salvage, 297 U.S. 106, 56 S.Ct. 375, 80 L. Ed. 511; Jamieson v. United States (D. C.) 10 F.Supp. 321; contra, Commissioner v. Farren, 82 F.(2d) 141 (C.C.A. 10). In the Salvage Case, the purchase of stock was not reported in the proper year, yet the taxpayer was allowed to use the cost basis for that year in determining the gain derived from the redemption of the stock. Only an innocent mistake of law was proved, and we held it immaterial that an assessment for that year was barred by the statute of limitations. We commented on Crane v. Commissioner, 68 F.(2d) 640 (C.C.A.1), and expressed our disagreement with certain views there announced. An unqualified application of the rule that failure to report income creates estoppel would mean that an equitable remedy can serve to nullify the substantive provisions of the statute of limitations as well as the statutory policy that income is to be allocated to its appropriate year, Burnet v. Sanford & Brooks Co., 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383, despite the loss of revenue, Helvering v. St. Louis S. W. Ry. Co., 66 F.(2d) 633 (C.C.A.8).

Moreover, there is evidence that the Bureau of Internal Revenue caused field audits to be made of the taxpayer's income tax returns from 1917 through 1926. When the taxpayer filed its consolidated return for 1926, the petitioner audited this return, investigated the transactions, and found deficiencies. On October 29, 1930, a deficiency letter was issued. It is nowhere stated that the taxpayer made any misleading statements or concealed the facts, and it is not denied that the interest payments under both contracts of sale were reported in the returns for the respective years. It thus appears that the petitioner did not rely upon the respondent's conduct. The Board was justified, and so are we, in assuming that the petitioner was advised of the facts and merely overlooked their legal significance. Sugar Creek Coal & Mining Co. v. Commissioner, supra; cf. Helvering v. Brooklyn City Ry. Co., 72 F.(2d) 274 (C.C.A.2).

The objection of the petitioner, that the respondent should not now be allowed to make his claims by way of amended petitions, claiming the transactions taxable in 1920 and 1917, respectively, because he did so before the Board when the periods of limitation had expired, is without merit. This phase of the claim of estoppel was not raised in the pleadings before the Board nor is it in the assignment of errors on appeal. Helvering, Commissioner, v. Salvage, 297 U.S. 106, 56 S.Ct. 375, 80 L.Ed. 511. And, furthermore, reliance upon the respondent's earlier petitions is not sufficiently shown nor is the Board's conclusion that there was an error of law on both sides influenced thereby.

 In computing the loss upon the retirement of 1924 railroad equipment, it was unnecessary to make adjustment for depreciation prior to January 1, 1909. The property retired in 1924 was acquired prior to January 1, 1909, which was the effective date of the corporation excise tax. The excise tax for 1909 was paid by the respondent. The respondent claims and computes a loss upon the basis of cost, waiving the 1913 market value. It is conceded that in accordance with the provisions of paragraph (b) of section 202 of the Revenue Act of 1924 (43 Stat. 255) the prima facie loss on its retirement of rolling stock in 1924, measured by the difference between original cost and salvage value, should be reduced by depreciation previously allowed; that is, depreciation subsequent to January 1, 1909. The petitioner claims further adjustment of loss for depreciation prior to 1909.

Section 204 of the Revenue Act of 1924 (43 Stat. 259) provides that the basis for determining gain or loss from disposition of property acquired prior to March 1, 1913, shall be its cost or fair market

value as of March 1, 1913, whichever is greater. Section 202, after stating that loss shall consist of the excess of the basis set forth in section 204 over the amount realized, provides: "In computing the amount of gain or loss * * * proper adjustment shall be made for * * * any item of loss, exhaustion, wear and tear, obsolescence, amortization, or depletion, previously allowed with respect to such property."

It seems clear that this statute forbids the construction urged by the petitioner, that the cost basis is to be computed by including depreciation prior to January 1, 1909. Section 202 prescribes the adjustments to be made. There is no ambiguity in the phrase "previously allowed," and it undoubtedly refers to allowances made under a revenue act in the determination of federal taxes.

If there were any ambiguity, it is resolved by legislative history. The Revenue Act of 1921 (42 Stat. 227) made no provision for adjustment, resulting in administrative confusion which the act of 1924 was intended to remove. (Report of House Committee on Ways and Means, February 11, 1924, accompanying H. R. 6715.) The act of 1924 submitted by the House contained the words "properly chargeable" which the Senate amended to "previously allowed" in order to remove a "possible ambiguity." (Report of the Senate Committee on Finance dated April 10, 1924.) In preparing the Revenue Act of 1926, the comment of the Senate Finance Committee on section 202, 1924 Act, was: "Owing to the fact that there was no income tax prior to March 1, 1913 in cases where property was acquired prior to that date, no depreciation has been 'allowed' and the taxpayer may receive too large a basis for determining gain or loss." (Report of January 16, 1926, to accompany H.R. 1, p. 15.)

The act of 1926, § 202(b) (2), 44 Stat. 11, 26 U.S.C.A. § 111 note, has a provision that the basis "shall be diminished in the amount of exhaustion, wear and tear * * * actually sustained before" March 1, 1913.

This question was considered fully and disposed of consistently with these views in Helvering v. St. Louis S. W. R. Co., 84 F.(2d) 857 (C.C.A.8).

The determination is affirmed.