NINA J. ENNIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 23608.  Promulgated September 27, 1951.

*Thomas J. Bailey, Esq.*, for the petitioner.
*Cyrus A. Neuman, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge:* Respondent has increased petitioner's income for the calendar year 1945 by the sum of $10,871.33 on the ground that the petitioner, who reported her income on the cash receipts method, was required under sections 42, 111 (a), and 111 (b) of the

Internal Revenue Code,[1] to include in her 1945 income the full amount of her one-half interest in the profit realized from the sale of the Deer Head Inn. See also Regulations 111, section 29.41–1.[2] Respondent contends that since the sale is a completed transaction in 1945 the entire profit on the sale is taxable in that year.

We agree that in every practical way the sale was complete in 1945. In that year the vendee went into possession of the property and at the same time assumed all the burdens and benefits of ownership. The purchase price was definitely fixed and the vendee was under an unconditional obligation to pay it under the terms set forth in the contract. *Nibley-Mimnaugh Lumber Co.*, 26 B. T. A. 978, affd. 70 F. 2d 843; *Union Pacific Railroad Co.*, 32 B. T. A. 383, affd. 86 F. 2d 637.

It does not follow, however, that the entire purchase price in excess of the basis constituted gain taxable in the year 1945. Since petitioner reported her income on the cash receipts and disbursements basis she realized gain from the sale of property only to the extent that the "amount realized" therefrom is in excess of her basis. Section 111 (a). Section 111 (b) of the Internal Revenue Code provides that the "amount realized" shall be "any money received plus the fair market value of the property (other than money) received."

Upon the sale petitioner received as a down payment a sum of cash not in excess of her basis for the property, plus the vendee's contractual obligation to pay the balance of the purchase price in deferred payments extending beyond the year in question. This contractual obligation cannot be considered an "amount realized" unless it is the equivalent of cash. In *John B. Atkins*, 9 B. T. A. 140, we stated: "* * * in the case of one reporting income on the receipts

---

[1] SEC. 42. PERIOD IN WHICH ITEMS OF GROSS INCOME INCLUDED.

(a) GENERAL RULE.—The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period. * * *

SEC. 111. DETERMINATION OF AMOUNT OF, AND RECOGNITION OF, GAIN OR LOSS.

(a) COMPUTATION OF GAIN OR LOSS.—The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113 (b) for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized.

(b) AMOUNT REALIZED.—The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received.

[2] Regulations 111:

SEC. 29.41–1. COMPUTATION OF NET INCOME.—Net income must be computed with respect to a fixed period. Usually that period is 12 months and is known as the taxable year. Items of income and of expenditure which as gross income and deductions are elements in the computation of net income need not be in the form of cash. It is sufficient that such items, if otherwise properly included in the computation, can be valued in terms of money. The time as of which any item of gross income or any deduction is to be accounted for must be determined in the light of the fundamental rule that the computation shall be made in such a manner as clearly reflects the taxpayer's income. * * *

and disbursements basis only cash or its equivalent constitutes income." This basic rule has been consistently followed. *Charles C. Ruprecht*, 16 B. T. A. 919; *Dudley T. Humphrey*, 32 B. T. A. 280; *C. W. Titus, Inc.*, 33 B. T. A. 928; *Alice G. K. Kleberg*, 43 B. T. A. 277; *Nibley-Mimnaugh Lumber Co., supra; Perry* v. *Commissioner*, 152 F. 2d 183.

In determining what obligations are the "equivalent of cash" the requirement has always been that the obligation, like money, be freely and easily negotiable so that it readily passes from hand to hand in commerce. See *Dudley T. Humphrey, supra*, wherein we held that nonnegotiable promissory notes are not the equivalent of cash and cf. *S. L. Meyer, Executor*, 23 B. T. A. 1201; *Harold W. Johnston*, 14 T. C. 560; *C. W. Titus, supra; Perry* v. *Commissioner, supra*. This principle was recently reiterated in the *Johnston* case wherein we held that a cash basis taxpayer realizes no income when he receives upon the sale of property a promise to pay contained in a contract of sale that "merely requires future payments and no notes, mortgages, or other evidence of indebtedness such as commonly change hands in commerce, which could be recognized as the equivalent of cash to some extent, are given and accepted as part of the purchase price."

In the case before us the promise to pay was merely contractual; it was not embodied in a note or other evidence of indebtedness possessing the element of negotiability and freely transferable. It is true that the contract possessed many elements of a mortgage, Corpus Juris, vol. 66, sec. 1080, p. 128; Tiffany, Real Property, 3d ed., vol. 1, sec. 308, p. 535; Corpus Juris Secundum, vol. 59, sec. 9–11, pp. 33–41; *Qualls* v. *Union Cent. Life Ins. Co.*, 7 So. 2d 558, but this characteristic does not lend to the contract the necessary element of negotiability. Cf. *Bernard Realty Co.* v. *United States*, 188 F. 2d 861.

We conclude, therefore, that the contractual obligation was not the "equivalent of cash," and the only "amount realized" by petitioner on the sale of the property in 1945 was the sum of cash received. Since this sum was not in excess of petitioner's basis for that property no gain was realized on the sale in 1945.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

TURNER, *J.*, dissenting: I am unable to reconcile the conclusions reached in this case with the contrary ruling which has long been settled law in cases where a vendor of real estate, in addition to the simple individual liability to pay, receives as further security a mortgage on the property sold. While there are form and technical differences in the two types of transactions, they are for practical purposes substantially similar. In each instance, the vendee is re-

garded as the owner of the real estate, and in each instance, the land may be sold, devised, or encumbered by him, and on his death descends to his heirs subject only to the mortgage or land contract.  In the case of land contracts, see on this point *Bowen* v. *Lansing*, 219 Mich. 117, 88 N. W. 384.  The purpose of both the land contract and the mortgage is to secure payment of the balance remaining of the simple or personal obligation to pay.  For a land contract case, see *Walker* v. *Casgrain*, 101 Mich. 604, 60 N. W. 291.  It is true that in the land contract cases there is no transfer of legal title until full payment is made, but the vendor holds legal title in trust for the purchaser pending such full payment.  *Hooper* v. *Van Husen*, 105 Mich. 592, 63 N. W. 522; *City of Marquette* v. *Michigan Iron & Land Co.*, 132 Mich. 130, 92 N. W. 934.  For other cases which seem to establish the similarity in over-all effect between mortgages and land contracts, see *Harold R. Smith*, 39 B. T. A. 892; *Title & Trust Co.*, 33 B. T. A. 25; *Barnard* v. *Huff*, 252 Mich. 258, 233 N. W. 213; *Chicago Boulevard Land Co.* v. *Apartment Garages*, 245 Mich. 448, 222 N. W. 697; and *Conners* v. *Winans*, 122 Misc. 824, 204 N. Y. S. 142.  And finally, both mortgages and land contracts are regularly sold, traded and assigned.  Probably the most noticeable difference between the two is geographic.  In Michigan, for instance, the use of the land contract, rather than the mortgage, appears to be the method commonly followed in making real estate sales.  We should where possible avoid one rule of law for one part of the country and a different rule for other sections.

*Harold W. Johnston, supra*, relied on by the Court herein, is in my opinion an entirely different case.  There the property sold was corporate stock and the selling price had not even been and could not be fixed and determined in 1942, the taxable year.  Furthermore, the discussion therein as to property received would, it seems to me, bring this case more nearly in line with the land mortgage cases than otherwise.

OPPER, *J.*, agrees with this dissent.