ALAN K. AND PATRICIA M. HARRIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Harris v. Commissioner
Docket No. 15508-82.
United States Tax Court
T.C. Memo 1986-225; 1986 Tax Ct. Memo LEXIS 383; 51 T.C.M. (CCH) 1118; T.C.M. (RIA) 86225; June 4, 1986. *383 Petitioner reported income and expenses with respect to the raising, breeding and training of horses. Petitioner timely filed an election to postpone until the close of the sixth taxable year of such activity the determination of whether it should be presumed that he was engaged in such activity for profit. Held, petitioner has failed to demonstrate that he realized a net gain in any year of such activity, so that the presumption under section 183(d), I.R.C. 1954, is inapplicable. Held further, petitioner has failed to demonstrate that such activity did not constitute an activity "not engaged in for profit," within the meaning of section 183, so that expenses properly attributable to such activity are deductible only to the extent allowable under section 183(b). James W. Wessel, for the petitioners. Jerry Lanting Leonard, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Chief Judge: Respondent determined by notices of deficiency dated April 6, 1982 and June 10, 1982 for the taxable years ended December 31, 1978 and December 31, 1979, respectively, deficiencies *386 in petitioners' Federal income taxes as follows: Taxable Year [1]
Deficiency
1978
$3,539.24
1979
3,038.00
The sole issue for decision is whether petitioners' raising, breeding and training of horses constituted an activity "not engaged in for profit" within the meaning of section 183. [2]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulated facts and exhibits attached thereto are incorporated herein by this reference. Petitioners Alan K. Harris and Patricia M. Harris, husband and wife, resided in Gardnerville, Nevada at the time they filed their *387 petition in this case. Petitioners filed joint Federal income tax returns with the Internal Revenue Service for the 1978 and 1979 taxable years. All references to petitioner in the singular or to "petitioner husband" refer to petitioner Alan K. Harris, and all references to "petitioner wife" refer to petitioner Patricia M. Harris. During the taxable years in issue, petitioner wife worked as a Christian Science practitioner, and reported net losses from this business of approximately $3,100 and $4,600 for 1978 and 1979, respectively. In these same years, petitioner husband was employed as an airline pilot by United Air Lines, Inc., and received approximately $45,000 per year in wages as an airline pilot. [3] On his 1978 and 1979 Federal income tax returns petitioner husband listed his occupations as a pilot and as a horse breeder. In the spring of 1974, petitioners purchased certain land located in Gardnerville, Nevada for $95,000. The land consisted of a 5-1/2 acre farm with a house and a 4-stall stable. Petitioner *388 constructed fences, added a small toolshed, and installed an irrigation system on the property. Between 1974 and 1978 petitioner investigated the horse breeding business by speaking to local people, attending horse shows, and reading on the subject. Among the individuals with whom petitioner spoke were one horse trainer and rider, and two breeders of Appaloosa horses. From 1974 until 1978 petitioners purchased several horses. In 1974 petitioner husband acquired an old palomino named "Nugget." In 1975 petitioner wife purchased a tentatively registered 5-year old pinto gelding, "Kerri's Sonny Boy," for $1,500, which died in 1980. In 1976 petitioner purchased a registered Appaloosa stallion, "Apache Totah," for $500. In 1977 he purchased an unregistered sorrel gelding and an unregistered palomino gelding, each for $400. In 1978 petitioner purchased a registered Appaloosa mare, the dam of Apache Totah, named "Star Boys Go Go," and her foal for $700. In 1980 petitioner executed a breeding contract to breed this mare, and the foal was born in March 1981. However, the official records of the Appaloosa Horse Club do not list the mare as having been mated with any registered Appaloosa *389 stallion since May 1977. After the 1980 taxable year, petitioner was audited by the Internal Revenue Service with respect to his horse breeding activity, conducted under the name of "Five Square Appaloosa." Petitioner timely filed an election to postpone until 1983 the determination of whether it should be presumed that, since 1978, he was engaged in this activity for profit. [4] Petitioner then compiled records of his income and expenses for 1978 and 1979. Thereafter, petitioner kept records with respect to the horse breeding activity and entered his records into ledgers in the January or February following the close of each calendar year, in preparation of his tax returns. On his Federal income tax returns, Schedule F, Farm Income and Expenses, for the following taxable years, petitioner reported amounts attributable to such horse breeding activity as follows: Year
Gross Income
Deduction
Net Gain
Net Loss
1978
$ 130.00
$ 9,483.08
$ 9,353.08
1979
120.00
12,467.58
12,347.58
1980
180.00
16,807.35
16,627.35
1981
16,634.86
16,634.86
1982
15,721.05
15,721.05
1983
8,500.00
8,181.00
$319.00
Totals
$8,930.00
$79,294.92
$319.00
$70,683.92
*390 The only year in which petitioner reported a net gain with respect to the horse breeding activity was 1983. The $8,500 amount of gross income reported in 1983 was derived entirely from sales of horses to Anthony R. Abbott (Abbott). Petitioner reported $1,800 in income, on the sale of the sorrel gelding on January 20, 1983 for $800, and on the sale of the palomino gelding on February 15, 1983 for $1,000. Petitioner did not reduce the amount of the income reported by his $800 cost, that is, $400 each, for these two horses. The remaining $6,700 in income reported for 1983 was based upon a document, labeled "Demand Note" (the note), executed on September 1, 1983 between petitioner, as seller, and Abbott, as buyer, for the sale of a registered Appaloosa horse named "Summer Ice." [5] The note provided that Abbott was "to pay on demand" to petitioner the amount of $5,500, plus $300 per month for a minimum of 6 months, for training and boarding expenses for this horse. The $6,700 amount is the sum of the $5,500 face amount of the note, plus $1,200 for expenses, that is, $300 per month from September through December 1983. The note further provided that petitioner was to retain possession *391 of the horse until the terms of the note were satisfied in full. As of the date of trial, petitioner had not been paid the $5,500 face amount of the note nor any of the additional monthly payments, and still retained possession of the horse. For the taxable years from 1978 through 1983, petitioner deducted various expenses attributable to the horse raising, breeding, and training activity. In 1980 petitioner claimed a loss in the amount of $1,500 upon the death of "Kerri's Sonny Boy." Petitioner also deducted $300 per month from September 1983 through February 1984 for training and boarding expenses for "Summer Ice," pursuant to the terms of the note as stated above. Petitioner claimed depreciation expenses for the horses, barn, fences, corrals, machinery and equipment, toolshed, truck and horse trailer. Also among the expenses reported with respect to such activity were costs for motels, meals, *392 parking and other travel expenses to San Francisco, California incurred by petitioner with respect to his occupation as an airline pilot. Petitioner did not list Five Square Appaloosa in any telephone directory, and, after 1976, did not subscribe to, nor advertise in, the "Appaloosa News," the official magazine of the Appaloosa Horse Club. Petitioner did not advertise his horses on any regular basis, and did not enter them in any horse shows. In the statutory notices of deficiency, respondent determined deficiencies in petitioners' Federal income taxes for the 1978 and 1979 taxable years. The deficiencies determined were based upon respondent's disallowance of deductions for expenses claimed with respect to petitioner's raising, breeding and training of horses, which respondent determined to be an activity not engaged in for profit. OPINION The sole issue for decision is whether respondent has correctly disallowed deductions taken by petitioner based on the determination that petitioner's raising, breeding and training of horses was an activity "not engaged in for profit" within the meaning of section 183. Section 183(a) provides the general rule that, in the case of an *393 activity by an individual not engaged in for profit, no deduction attributable to such activity shall be allowed except as provided in section 183(b). Section 183(b)(1) provides that there shall be allowed those deductions that would be allowable without regard to whether or not the activity is engaged in for profit. See sec. 1.183-1(b), Income Tax Regs.Section 183(b)(2) provides that deductions that would be allowable only if the activity were engaged in for profit shall be allowed to the extent that the gross income derived from the activity exceeds the deductions allowable under paragraph (1) of section 183(b). Section 183(c) defines an activity not engaged in for profit as follows: Activity Not Engaged in for Profit Defined.--For purposes of this section, the term "activity not engaged in for profit" means any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212. Section 183(d) provides that, in the case of an activity which consists in major part of the breeding, training, showing, or racing of horses, if the gross income derived from such activity exceeds the deductions *394 therefrom for any 2 of 7 consecutive taxable years, then such activity shall be presumed to be engaged in for profit, unless the Secretary establishes to the contrary. Respondent has determined that petitioner's horse breeding activity was not engaged in for profit, and therefore, that petitioner's deductions for expenses incurred with respect to such activity must be limited in accordance with section 183(b). Petitioner argues that it should be presumed that the activity was engaged in for profit in accordance with section 183(d), and, in any event, that he is entitled to all of the deductions claimed as attributable to the horse breeding activity because he possessed the requisite intention of making a profit. Petitioner bears the burden of proof. Rule 142(a); Golanty v. Commissioner,72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). Presumption Under Section 183(d)
The parties have stipulated that petitioner timely elected, in accordance with section 183(e), to postpone until the close of the sixth taxable year of the activity the determination of whether the presumption under section 183(d) shall apply *395 to his horse breeding activity. Petitioner contends that he was engaged in the raising, breeding and training of horses as of 1978, so that the sixth taxable year of the activity refers to 1983. Petitioner does not dispute that he incurred a net loss from the activity in each of the five taxable years from 1978 through 1982. Therefore, in order for the presumption to apply, petitioner must demonstrate in the first instance that for 1983, as the first of 2 years of net gain within the 7 consecutive taxable year period, gross income derived from the horse breeding activity exceeded deductions therefrom. [6] Cf. Moore v. Commissioner,85 T.C. 72, 112-113 (1985). In the 1983 taxable year, petitioner reported a net gain of $319 from the horse breeding activity, based upon gross income in the amount of $8,500 from the sales of three horses. Petitioner reported $1,800 in gross income from the sales *396 of two geldings, at $800 and $1,000, respectively. However, the amount of the actual gross income on these sales should have been reduced by petitioner's $800 combined costs of these horses. Sec. 1.61-4(a), Income Tax Regs. See also sec. 1.183-1(e), Income Tax Regs.
The remaining $6,700 reported in income for 1983 was based on a "Demand Note" executed on September 1, 1983 for the sale of an Appaloosa horse. As of the date of trial, petitioner had not received any payments with respect to this note, and still retained possession of the horse. The note merely represents a promise by a third party to make payments to petitioner at some uncertain future date, at which time petitioner would then transfer possession of the horse. A mere promise to make future payments is not properly includable in income. Ennis v. Commissioner,17 T.C. 465, 470 (1951). Therefore, petitioner has overstated his income for 1983 based on the note, and, in fact, had incurred a loss with respect to his horse breeding activity in this year as well. [7]
*397 Based on the foregoing, we find that petitioner has failed to demonstrate that he derived a net gain in 1983 from this activity. Accordingly, we conclude that the presumption under section 183(d) is inapplicable. However, petitioner's failure to qualify for this presumption does not give rise to any inference that the activity was not engaged in for profit. Sec. 1.183-1(c)(1), Income Tax Regs. Therefore, we next must consider whether petitioner engaged in this activity with the objective of making a profit. Profit Objective
Petitioner maintains that since 1978 he has been in the business of raising, breeding, and training Appaloosa horses with the intent of making a profit, within the meaning of section 183. It is not necessary that petitioner's expectation of making a profit be reasonable, so long as he possessed a bona fide objective of realizing a profit. Sec. 1.183-2(a), Income Tax Regs.; Golanty v. Commissioner,72 T.C. at 425-426; Bessenyey v. Commissioner,45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967). It must be determined whether petitioner possessed an "actual and honest profit objective," Dreicer v. Commissioner,78 T.C. 642, 645 (1982), *398 affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). The question of whether petitioner entered into, and continued to engage in, the horse breeding activity with the intention of making a profit is a question of fact. Golanty v. Commissioner,72 T.C. at 426. Greater weight is accorded to objective facts than to petitioner's statements of his intent. Sec. 1.183-2(a), Income Tax Regs.; Engdahl v. Commissioner,72 T.C. 659, 666 (1979). Section 1.183-2(b), Income Tax Regs., lists the following nine factors to be considered, along with all of the surrounding facts and circumstances, in determining whether an activity is engaged in for profit: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his or her advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits earned, if *399 any; (8) the financial status of the taxpayer; (9) elements of personal pleasure or recreation involved in the activity. Petitioner contends that the requisite profit motive is evidenced by the preparation undertaken with respect to the horse breeding activity prior to 1978, including his reliance upon the advice of individuals whom he considered to be experts in the field, and the time and effort he expended in the activity. Although there may be some merit to petitioner's arguments, we conclude that, taken as a whole, the facts of this case do not support petitioner's position as discussed more fully below. Petitioner testified at trial that between 1974 and 1978 he investigated the horse breeding business by attending horse shows, reading on the subject, and speaking to local people. Petitioner spoke with a horse trainer and rider and two breeders of Appaloosa horses before he decided to raise, breed, and train Appaloosa horses. Although petitioner has not introduced any evidence to support his claim that the individuals consulted are experts in their fields, we do not doubt that he believed them to be so qualified. Petitioner further testified that during the taxable *400 years in issue he worked as an airline pilot for approximately 12-15 days per month and devoted the remainder of his time and efforts to his horse breeding activity. Petitioner stated that he personally performed repairs on the farm and that he and his son tended to the horses. Petitioner also stated that, although he enjoys riding horses, he did not have much time for riding, and furthermore that he did not consider his activities on the farm to be recreational or for pleasure. Petitioner also contends that the manner in which he conducted the horse breeding activity supports his position. Petitioner maintains that he kept complete and accurate records of income and expenses attributable to the horse breeding activity. Although he recorded his income and expenses into ledgers after the close of each calendar year, it appears that petitioner merely transferred these records from other notations compiled throughout each year. Petitioner further contends that the profit motive is evidenced by his anticipated appreciation in the value of assets used in the activity, particularly the value of the farm land. The land was purchased in 1974 at $95,000. Petitioner testified that as *401 of the date of trial the land was valued at $147,500-$150,000. However, petitioner has failed to introduce any evidence to support this valuation. Also, it appears that petitioner has not treated all of the land as an asset of the horse breeding activity. For example, on Schedule F of his 1978 and 1979 returns, petitioner deducted as expenses attributable to the horse breeding activity only the interest, taxes, insurance and depreciation expenses allocated to the barn and corrals, rather than the full amount of these expenses incurred upon the entire piece of property. Therefore, although an expectation of appreciation in the value of land used in an activity may be considered in a taxpayer's intention to derive a profit, sec. 1.183-2(b)(4), Income Tax Regs., any holding of the farmland by petitioner for profit should be considered to be an activity separate from petitioner's horse breeding activity. See sec. 1.183-1(d)(1), Income Tax Regs.[8]
Another factor that also weighs against petitioner is the history of losses incurred with *402 respect to this activity.In each year from 1978 through 1982 petitioner reported a net loss, in amounts ranging from approximately $9,000 to $16,000. Only in 1983 did petitioner report a net gain, of merely $319, upon the sales of three horses. However, as discussed above, the gross income reported in 1983 is overstated because petitioner failed to reduce the income reported by his $800 cost of two of the horses sold, and because he reported $6,700 in income from the sale of the third horse, which amount was not received in 1983 nor as of the date of trial. Although losses in the initial years of an activity are not necessarily fatal to the section 183 determination, sec. 1.183-2(b)(6), Income Tax Regs., the ultimate goal of an activity engaged in for profit must be to realize a net profit on the activity so as to recoup losses sustained previously. Bessenyey v. Commissioner,45 T.C. at 274. Petitioner has not indicated any changes made in this activity over the 1978-1983 period that might have supported an intent to improve its profitability. For example, with respect to the breeding aspect of this activity, it must be noted that petitioner owned only one mare, *403 and from 1978 to 1983 only had her bred once. Also, the foal born to this mare is the only horse petitioner acquired after 1978, the year in which petitioner purports to have commenced to engage in this activity for profit. We also note that petitioner did not list the purported business, Five Square Appaloosa, in any telephone directory, and did not advertise his horses on any regular basis nor enter them in any horse shows. Also, the fact that petitioner had substantial income from his occupation as an airline pilot, coupled with the considerable tax benefits realized from this activity, tends to indicate that the horse breeding activity was not entered into, or continued to be engaged in, for profit. See sec. 1.183-2(b)(8), Income Tax Regs.; Golanty v. Commissioner,72 T.C. at 428-429. Upon review of the entire record, we conclude that petitioner has failed to carry his burden of proof that his raising, breeding and training of horses did not constitute an activity "not engaged in for profit" within the meaning of section 183. It also must be noted that petitioner has deducted, as expenses attributable to the horse breeding activity, costs for motels, meals, *404 parking, and other travel expenses incurred with respect to his occupation as an airline pilot. Petitioner argues that these expenses constitute deductible travel expenses between his two businesses as a pilot and as a horse breeder. Inasmuch as petitioner's horse breeding activity does not constitute a "business" we reject petitioner's argument. [9] Accordingly, petitioner's deductions for expenses properly attributable to his horse breeding activity are limited to the extent allowable under section 183(b). Decision will be entered for the respondent.
Footnotes
1. In their petition, petitioners contested deficiencies purportedly determined in their Federal income taxes for the 1978, 1979, and 1980 taxable years. By order of the Chief Judge, dated September 7, 1982, this Court granted respondent's motion to dismiss this case for lack of jurisdiction insofar as it related to the 1980 taxable year.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. For the 1980 through 1983 taxable years, petitioner husband's income for wages as an airline pilot steadily rose from approximately $68,000 to $98,000.↩
4. See subsections (d) and (e) of section 183↩.
5. The record does not indicate whether "Summer Ice" is the foal born to "Star Boys Go-Go" in March 1981, or a different horse acquired by petitioner at some other time. Therefore, any acquisition costs incurred by petitioner with respect to this horse are not clear from the record.↩
6. We note that 1984, the seventh consecutive taxable year of the activity, is not before the Court. However, in light of our conclusion that there was no net gain in 1983, we need not speculate whether petitioner might have realized a net gain in that seventh year.↩
7. Respondent argues that the note does not constitute income to petitioner either because it does not satisfy the "cash equivalency test," or alternatively, because the note's fair market value is less than its face value, citing Warren Jones Company v. Commissioner,524 F.2d 788 (9th Cir. 1975). Based on our conclusion that the note represents a mere promise to make future payments, we need not address these arguments. We also note that petitioner's 1978 and 1979 taxable years only are properly before the Court. Therefore, we need not discuss whether petitioner may be entitled to any adjustment in his Federal income tax liability in any subsequent taxable year as a result of these improper inclusions in gross income.↩
8. Boddy v. Commissioner,T.C. Memo. 1984-156, affd. without published opinion 756 F.2d 884↩ (11th Cir. 1985).
9. On brief, petitioner stated that his employment as an airline pilot was based in San Francisco, California. Therefore, it appears that these travel costs represent nondeductible expenses incurred with respect to petitioner's commuting between his personal residence in Nevada and his tax home in California. Commissioner v. Flowers,326 U.S. 465↩ (1946). In either event, petitioner has failed to carry his burden of proof that hs is entitled to deduct these expenses.