ESTATE OF ELMIRA S. BRANDES, DECEASED, ROBERT S. BRANDES, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 27513-84.        Filed September 8, 1986.

---

*Emmanuel F. Guyon*, for the petitioner.
*Lauren W. Gore*, for the respondent.

OPINION

SIMPSON, *Judge*: The Commissioner determined a deficiency of $14,630.57 in the estate tax of the petitioner. The issues for decision are: (1) Whether an estate can value a farm under section 2032A of the Internal Revenue Code of 1954[1] with respect to which the decedent had entered into a contract of sale; and (2) whether section 2036 is applicable to such sale.

All of the facts have been stipulated, and those facts are so found.

Elmira S. Brandes (the decedent) died on December 12, 1980. Her son, Robert E. Brandes, was her sole surviving heir and has been appointed the executor of her estate; he maintained his legal residence in Streator, Illinois, at the time of the filing of the petition in this case. A Federal estate tax return was filed for the estate with the Internal Revenue Service Center, Kansas City, Missouri.

Prior to December 28, 1977, the decedent owned two parcels of land, each consisting of 80 acres, and described as "the East half of the Northeast quarter of section 11" (the East half) and "the West half of the Northwest quarter of section 12" (the West half), both in Otter Creek Township, LaSalle County, Illiniois. The parcels were used as a farm. At that time, the decedent was ill, and the income from the farms was insufficient for her medical care and other purposes.

The East half was appraised at a fair market value of $140,000 on June 1, 1977. On December 28, 1977, the decedent entered into a contract to sell the East half to her son for $140,000. A downpayment of $25,000 was payable on the execution of the contract, and the remainder was payable in annual installments of $11,850 commencing in 1978 and continuing for 15 years. Each installment included interest at the rate of 6 percent per annum. The decedent executed a deed transferring title to the East half and delivered it into escrow to be held by the escrow agent until

---

[1] All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue.

the payment of the final installment under the contract. Mr. Brandes made the downpayment and paid three of the installments before the death of the decedent; the remaining balance due at her death was $99,241.18.

The contract provided that Mr. Brandes was to receive possession of the East half on March 1, 1978. The 1977 crops were to be retained by the decedent, and she was to pay the 1977 taxes, which would be due in 1978. The contract also provided that Mr. Brandes would pay the taxes for 1978 and all subsequent years, and he was to receive the crops for 1978 and thereafter.

The decedent resided on the farms until several years before her death, when she moved to a nearby town. During those last several years, both the East half and the West half farms were leased to a nephew who operated the farms on a crop-share basis. At the date of her death, the decedent continued to own the West half.

A Federal income tax return was filed for the decedent for 1980. On that return, $6,288.18 was reported as interest on a "personal note Robert Brandes," and $5,282 was reported as farm income. No deductions were itemized.

On the estate tax return filed for the estate of the decedent, both the West half and the East half properties were reported.[2] The parties agree that the fair market value of the West half at the date of the decedent's death was $192,000 and that the special use valuation, computed in accordance with section 2032A, of such property at such time was $59,000. The return reported that the East half property had been sold and that $99,241.18 remained payable under the contract. However, the return claimed that the decedent had a retained life estate in the property and that under section 2036 the value of the property was includable in the estate. Accordingly, the return claimed that such property was also subject to the special use valuation under section 2032A and reported such property as having a value of $59,000. Nevertheless, the election for special use valuation under section 2032A and the agree-

---

[2] On the return, the properties were confused: the West half property was reported as sold to Mr. Brandes, but the entire record makes clear that it was the East half property which was sold.

ment required by such section were filed only with respect to the West half property.

In the notice of deficiency, the Commissioner determined that the estate was not entitled to use a special use valuation for the East half because the property had been sold; he determined that the amount remaining due under the contract was includable in the estate.

We must decide whether the decedent's interest in the East half farm is eligible for the special use valuation under section 2032A. That section allows an estate to elect to use a special method for valuing qualified real property which is used as a farm or in a closely held business. Under the special method, the value of the property is based on its use in the farm or business, rather than on the market value. The purpose of section 2032A is to enable families to continue to use the property as a farm or other business, and not to be compelled to sell it to pay the taxes. H. Rept. 94-1380 (1976), 1976-3 C.B. (Vol. 3) 735, 741.

Qualified real property is defined by section 2032A(b), insofar as here relevant, as:

real property located in the United States which was acquired from or passed from the decedent to a qualified heir of the decedent and which, on the date of the decedent's death, was being used for a qualified use by the decedent or a member of the decedent's family, * * *

The estate presents a variety of arguments in support of its position that the estate can include the value of the East half farm, computed under section 2032A, and not the value of the rights under the contract of sale between the decedent and Mr. Brandes. First, the estate argues that under Illinois law, a vendor retains legal title until there is a conveyance sufficient to transfer title and that there was no such conveyance in this case. The estate also urges us to ignore or set aside the contract. It contends that the decedent continued to have all of the incidents of ownership: she retained legal title to the property; she retained all crop proceeds; she made all decisions regarding the management of the farms, including the decisions as to planting, fertilizing, seed, crop rotation, and other matters; she paid the real estate taxes; and she dealt with the tenant. The estate takes the position that under these circumstances, there was a breach of the contract of sale by the decedent,

that such breach operated to rescind the contract, and that the breach should cause the Court to apply "reverse equitable conversion." The estate has the burden of proving the allegations on which it relies. Rule 142(a), Tax Court Rules of Practice and Procedure; *Welch v. Helvering*, 290 U.S. 111 (1933).

In our opinion, the estate has failed to prove its factual allegations. The contract of sale provided that the decedent was to deliver possession of the East half farm to Mr. Brandes in 1978, that he was entitled to the crops for that and subsequent years, and that he was to pay the taxes for 1978 and subsequent years. The estate claims that these provisions of the contract were not carried out, but it has failed to present sufficient evidence to prove its claims. There is absolutely no evidence as to who paid the taxes on the farm for 1978 and later years. In the income tax return filed for the decedent for 1980, there was no claim of a deduction for taxes; in fact, deductions were not itemized, and the failure to claim the deduction for taxes may be explained by such circumstance. Nevertheless, the estate has presented no evidence showing that taxes were in fact paid by the decedent.

Mr. Brandes stated that, despite the contract of sale, the decedent marketed the crops and participated in the management of the farm. However, we do not know who received the proceeds from the marketing of the crops. It must also be remembered that the decedent continued to own the West half farm, and her participation in the management and her alleged dealings with the tenant may have related to her ownership of that farm. Similarly, farm income was reported on the 1980 return for the decedent, but that income may have been earned by the West half farm. The evidence is simply insufficient for us to conclude that there was a breach of the contract of sale.

Moreover, we cannot ignore or set aside that contract. In *Commissioner v. Union Pac. R. Co.*, 86 F.2d 637, 639 (2d Cir. 1936), affg. 32 B.T.A. 383 (1935), the court had to decide when a sale took place; the court stated the rule to be:

A closed transaction for tax purposes results from a contract of sale which is absolute and unconditional on the part of the seller to deliver to

the buyer a deed upon payment of the consideration and by which the purchaser secures immediate possession and exercises all the rights of ownership. * * *

See also *Ennis v. Commissioner*, 17 T.C. 465 (1951). Here, a contract of sale was executed in 1977, and the deed was also executed and transferred into escrow. A downpayment was made, and so far as we know, possession was delivered in 1978 to the purchaser. Under these circumstances, there was a sale of the property, for Federal tax purposes, in 1978. As a result of that sale, the decedent's interests changed: she no longer owned the East half farm, but she had a contract giving her certain rights.

Thus, when the vendor dies while the contract is subsisting and specifically enforceable by and against him, his executor or administrator becomes entitled to the unpaid purchase money for the benefit of the legatees or next-of-kin; and if the purchaser fails to complete and the contract is not specifically enforced against him, the vendor's executor or administrator can enforce payment of this money out of the land in the hands of the vendor's devisee or heir. * * * [3 American Law of Property, sec. 11.23, at 65 (1952); fn. ref. omitted.]

If there was a breach of the contract, Mr. Brandes may have had a right to certain remedies, including the possibility of having the contract rescinded, but there is no evidence that he ever exercised any such right. See *Izzo v. City of Loves Park*, 20 Ill. App. 2d 117, 155 N.E.2d 312 (1959). Thus, at the time of the decedent's death, she did not own the East half farm, but she had a right to receive the payments under the contract of sale. The value of those payments, not the value of the farm, is includable in her estate. *Estate of Buckwalter v. Commissioner*, 46 T.C. 805 (1966).

The estate also argues that Congress intended for section 2032A to be applicable when the value of a farm is only indirectly includable in an estate. H. Rept. 94-1380, *supra*, 1976-3 C.B. (Vol. 3) at 758. However, in this case, it is not the value of the East half which is includable in the estate, directly or indirectly; it is the value of the decedent's rights under the contract of sale which is includable. The price for the farm represented its value, but she had received substantial payments under the contract before her death. In this case, it happens that the remaining payments under

the contract exceeded the special use valuation. However, if she had received more of the installments before her death, the balance due under the contract might be less than the special use valuation, and in that event, it would be clear that only the value of the contract payments should be includable in the estate, not the special use valuation of the farm.

The estate also suggests that, after the decedent's death, there was a merger of the contract of sale, thereby extinguishing any right under that contract. However, the value of the rights under the contract is includable in the estate, even though the obligation under the contract is extinguished after the decedent's death. Sec. 20.2033-1(b), Estate Tax Regs.; *Estate of Buckwalter v. Commissioner, supra*. Thus, even if Mr. Brandes is not required to complete the installment payments under the contract because he is the beneficiary under the will, the value of the rights under the contract is nevertheless includable in the estate.

Finally, the estate maintains that we should set aside the contract of sale because section 2036 is applicable to the transfer. Under that section, property is includable in an estate where the decedent transferred the property during his lifetime but retained a life estate or certain other rights to it. However, section 2036 is not applicable to "a bona fide sale for an adequate and full consideration in money or money's worth." In this case, there was an appraisal of the East half farm within a few months before the contract of sale, and the farm was sold for the appraised value. Under such circumstances, we are satisfied that the sale to Mr. Brandes was a bona fide sale for full consideration to which section 2036 is not applicable. Consequently, we hold that the value of the remaining payments under the contract of sale is includable in the estate and that such value cannot be determined under section 2032A.

*Decision will be entered for the respondent.*